UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                  :    **<u>OPINION AND ORDER</u>**
                                  :    **<u>REGULATING TESTIMONY AT</u>**
IN RE SEPTEMBER 11 LITIGATION   :    **<u>DEPOSITIONS WHEN</u>**
                                  :    **<u>ANSWERS MIGHT CONTAIN</u>**
                                  :    **<u>SSI</u>**
                                  :
                                  :    21 MC 97 (AKH)
                                  :    21 MC 101 (AKH)
-------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

        I write to rule on a strange and significant phenomenon. The Transportation Security Administration ("TSA"), having first intervened in these actions to protect Sensitive Security Information ("SSI"), declines to attend noticed depositions of the airline defendants, where testimony is likely to contain such information. Instead, TSA seeks to impose on defendants' counsel the obligation to object and prevent answers that might disclose SSI. Counsel for defendants, believing that their clients' interests are best advanced by answering the questions put to their witnesses and that the applicability of SSI to conditions of airline security five years earlier might not be easy to discern, object to the TSA proposal. Defense counsel also express concern about exposure to civil penalties if they and their witnesses fail to protect SSI. Plaintiffs press to proceed, citing lengthy delays, and pointing out that many of their counsel—all those who would be taking the depositions—were cleared by TSA to obtain access to SSI pending TSA authorization of such disclosure. Plaintiffs contend that the procedure recommended by the TSA, that they could put questions to witnesses but not hear answers until final determinations by TSA that the answers could be given, would make the role of counsel

entirely ineffective, and cancel the very right of the clients to seek a relief specifically acknowledged by Act of Congress.

Judicial intervention to regulate the impasse is imperative, to avoid further and unnecessary delay in the progress of these cases and to relieve counsel of the inherent conflicts and artificial roles that TSA's position would create for them. For the reasons stated in this opinion, I hold that there are reasonable and appropriate ways to allow the depositions to proceed by normal procedures, without compromising SSI or the jurisdiction of TSA to determine SSI.

**I. CHRONOLOGICAL BACKGROUND**

The terrorist-related aircraft crashes of September 11, 2001 shocked America by the number of deaths and the scope of injuries that directly resulted, and in many indirect ways. One particular consequence was the threat to the American airline industry. As airline executives represented to Congress, the lawsuits that were expected to follow could cripple the American aviation industry, causing extensive and dangerous consequences to the entire nation.

Congress responded quickly, passing eleven days later the Air Transportation Safety and System Stabilization Act ("ATSSSA"). ATSSSA, Pub.L. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. §§ 40101 note). Recoveries against the airlines were to be limited to their insurance coverage. ATSSSA § 408(a). All claims "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001" "including any claim for loss of property, personal injury, or death" were to be brought exclusively in the United States District Court for the Southern District of New York. ATSSSA § 408(b)(3). And most uniquely, the injured and the representatives of those

who had died were given an alternative to a lawsuit: a Victim Compensation Fund specially established and funded to provide quick, economical and final tax-free relief to those who might wish to apply. ATSSSA § 405.

The story of the Victim Compensation Fund is the subject of the report of its brilliant, energetic and empathetic Special Master, Kenneth Feinberg. See Kenneth R. Feinberg et al., U.S. Dept. of Justice, Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001. Of those who lost family members, 2,880, representing 97 percent, elected to apply. An additional 2,680 individuals who sustained injuries on September 11 or during the rescue efforts also elected to apply. Total recoveries were $7.049 billion, amounting to an average of $2 million awarded to family members of the deceased and $400,000 awarded to those who sustained physical injury. But for the Victim Compensation Fund, all or most of the claimants would have filed suit in this court.

As the judge who drew the assignment to preside over all the September 11-related liability lawsuits, my first efforts were to preserve the alternative conferred by Congress in the ATSSSA: to file a claim with the Victim Compensation Fund, or to file a lawsuit. My initial decisions preserved both options. Compare Colaio v. Feinberg, 262 F. Supp. 2d 273 (S.D.N.Y. 2003), aff'd, 345 F.3d 135 (2d Cir. 2003) (upholding validity of Victim Compensation Fund), with In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003) (holding that defendants have duty to ground victims, as well as passengers, for negligently caused death and injury). Thus, the injured, and the representatives of those who died, were entitled to seek relief, either "by filing claims with [the] Special Master," or "in the traditional manner, by alleging and proving their

3

claims in lawsuits[.]" In re September 11 Litigation, 280 F. Supp. 2d at 286. But these were alternatives; a claimant could not first file with the Victim Compensation Fund, and then, on second thought, file a lawsuit. See Virgilio v. Motorola, 2004 WL 433789 (S.D.N.Y. March 10, 2004), aff'd, 407 F.3d 105 (2d Cir. 2005).

The time provided by Congress for filing with the Victim Compensation Fund drew to a close on December 22, 2003. The Fund officially closed June 15, 2004. Remaining for determination then were the lawsuits filed in this court.

By companion Orders of July 24, 2002 and November 1, 2002, I ordered the consolidation of all actions for wrongful death, personal injury, and property damage or business loss under the master docket 21 MC 97.[1] (See Order dated July 24, 2002; Order dated Nov. 1, 2002.) TSA intervened in order to protect against unauthorized disclosure of information deemed by TSA to constitute SSI. (See Order to Show Cause, dated June 28, 2002.) In setting forth its approach to disclosure of SSI information for purposes of the instant litigation, TSA initially took the position that all SSI-related discovery requests should be stayed pending narrowing of the issues relevant to the September 11 litigation by motion practice. (See Decl. of Stephen McHale ("McHale Decl. I"), dated Sept. 12, 2002 at ¶¶ 16, 17.) Following such narrowing of the potential scope of SSI-related discovery, TSA proposed to provide counsel "SSI substitutes" consisting of appropriately redacted documents and perhaps supplemented by a "general summary of SSI, and/or a declaration that supports certain material facts that relate to the particular SSI at issue." (Id. at ¶ 19.) As an alternative to provision of "SSI substitutes," TSA also proposed to establish a clearance procedure for a limited number of attorneys

---

[1] By Order of March 10, 2005, I directed that all cases concerning property damage and business loss arising out of September 11, 2001 be transferred and consolidated under a new master docket, 21 MC 101. (See Order dated March 10, 2005.)

and litigation support staff whereby such individuals would be granted conditional access to material deemed to constitute SSI. (Id. at ¶¶ 20, 21.) Further to the TSA representations, thirteen of plaintiffs' lawyers in fact obtained the needed security clearance. (See TSA Letter, dated Dec. 2, 2003; see also McHale Decl. I at ¶¶ 20, 21.)

Plaintiffs then propounded interrogatories and document requests relevant to the basic issues of the litigation, namely the screening and security measures in effect at the nation's airports in the months before September 2001. In keeping with TSA assertions that all documents responsive to plaintiffs' discovery requests should be submitted for its initial review, (see Decl. of Stephen McHale ("McHale Decl. II"), dated Feb. 5, 2004, at 14, 15) defendants turned over relevant documents to TSA in three separate waves beginning in late 2003. Although documents were released by TSA for production on a rolling basis following SSI review and appropriate redaction, the process was a slow one, and TSA did not complete its review of the first and second wave of documents until late 2005.

Subsequent to the commencement of document review by TSA, and two years after its intervention in this litigation, the TSA retreated from its initial position and determined that it would not allow for conditional disclosure of material containing SSI to the small group of cleared plaintiffs' attorneys. (See Decl. of Stephen McHale ("McHale Decl. II"), dated Feb. 5, 2004, at ¶¶ 12-15.) Thus, although defendants' attorneys were privy to SSI coming from their respective clients' files, and perhaps from co-defendants' files, plaintiffs' attorneys were barred from seeing or hearing information deemed to constitute SSI and thereby, despite representing people whom Congress had

acknowledged as having the right to sue, became ineligible effectively to represent their clients in such suits.

As the litigation lurched past the three-year mark with no discernable progress being made, I directed the parties to develop a joint protocol that would allow for needed discovery and depositions to proceed while protecting against unauthorized disclosure of SSI. (See Order dated Sept. 28, 2005, at 9.) The parties, however, remained unable to reach a resolution and, in lieu of such a joint determination, I urged that TSA issue final orders as to the scope and manner of its SSI determinations such that these determinations could be applied or appealed.[2] TSA, although not adverse to the issuance of final orders, objected to plaintiffs' request that TSA provide specific responses to each redaction in the documents already proffered for TSA review and urged that the parties engage in a further period of limited negotiation.

At the case management conference of November 18, 2005, I expressed displeasure with the absence of progress in the continuing negotiations for a protocol, noting that four years had passed since September 11, 2001, without visible progress in the lawsuits brought by the families of those who had lost their lives. I noted further that, without progress in this most basic part of the September 11 litigation, none of the other lawsuits could meaningfully progress.[3] Framing the critical issue, namely the right of plaintiffs to pursue a course of action expressly acknowledged by Congress, I observed:

---

[2] Pursuant to 49 U.S.C. § 46110, final orders of the TSA may be reviewed by filing a petition for review in an appropriate U.S. Court of Appeals.

[3] The September 11 cases consolidated before me, totaling over 5,000 in number, have been organized under separate master dockets. Cases alleging personal injury and wrongful death resulting from the attacks of September 11 have been consolidated under Master Docket 21 MC 97. All cases concerning property damage and business loss arising out of September 11 are consolidated under Master Docket 21 MC 101. Outside of the suits seeking relief for the destruction of life and property resulting directly from the attacks themselves, are the suits seeking relief for respiratory injuries sustained by cleanup, recovery

6

> September 11, 2001 occurred more than four years ago. While we are
> playing, people are still absorbed with the tragedy that occurred in their
> lives. What right do we have to indulge ourselves in the normal
> bureaucracy of discovery proceedings while people are waiting for a final
> decision. Do they have a right or do they not have a right to what they feel
> is their damage. That is the burning issue. That is the issue all of us are
> engaged in advancing.

(See Transcript of Nov. 18, 2005 ("Nov. 18 Transcript") at 33:5-13.) Finding that further delay was not tolerable, I suggested to plaintiffs that they notice depositions, forcing TSA to make its orders in the forms of directions to witnesses not to answer, and expressed the belief that a deposition procedure could create a better record of plaintiffs' need to know, in the context of discovery relevant to the issues of the underlying lawsuits.

TSA issued the first of three planned final orders on February 7, 2006, almost four years after TSA's intervention. (See Final Order of Requests for Conditional Disclosure of SSI ("Final Order I"), dated February 7, 2006.) The first final order sets out TSA's determination that conditional disclosure of SSI is unwarranted and reaffirms TSA's position that all documents responsive to discovery requests should be subject to its review before any disclosure. TSA issued its second final order on March 17, 2006, setting out its determinations as to what information constitutes SSI and providing that "only if a security countermeasure is obsolete, in that it will not be revived and therefore reveals nothing about current or future security countermeasures, or if security intelligence is taken over by events, will information lose its SSI protection and be released publicly." (Final Order II, dated March 17, 2006 ("Final Order II") at 2.) Both

---

and rescue crews who worked at the World Trade Center site and the surrounding areas in the weeks and months following September 11. Cases brought by workers who sustained respiratory injury while working at the World Trade Center site have been consolidated under Master Docket 21 MC 100. Cases brought by workers who sustained respiratory injury while working in the area surrounding the World Trade Center site have been consolidated under Master Docket 21 MC 102. Also before me is the litigation concerning insurance obligations arising from the destruction of property on September 11, docketed as 03 Civ. 00332.

plaintiffs and defendants are in the process of filing Petitions for Review of the two final orders.

Meanwhile, pursuant to my direction, plaintiffs have served defendants with 30(b)(6) notices wherein plaintiffs seek to elicit testimony as to four critical areas necessary to both the prosecution and defense of the lawsuits: 1) "the warnings and information supplied to the U.S. carriers by the Federal Aviation Administration ("FAA") about the threat of hijackings, including terrorist hijackings, prior to 9/11"; 2) "all airport passenger screening procedures which were utilized, including checkpoint screening procedures prior to and after 9/11"; 3) "the so-called 'common strategy' in the event of a threatened hijacking"; and 4) "the identity of documents submitted to the TSA to determine whether they contain Sensitive Security Information." (Transcript of March 3, 2006 Conference ("March 3 Transcript") at 37-38.) The depositions are scheduled to commence during the first week of April 2006.

Defendants caution that, in light of TSA's Final Orders, the answers elicited by these areas of inquiry will necessarily implicate SSI and therefore will trigger the obligation imposed on defense counsel by TSA regulations to protect against unauthorized disclosure. Such an obligation to protect against disclosure, urges defense counsel, places them in conflict, between enforcing government regulations that seem to prohibit disclosure, and the best interests of their clients requiring disclosure. As defense counsel state, "much of what the TSA has identified as SSI is directly relevant to the exclusive standard of care governing their conduct on September 11, 2001 and is at the heart of their defense." (See Joint Letter, dated March 9, 2006 ("March 9 Joint Letter") at 2.) Plaintiffs argue that TSA should be deemed to have waived any objections to the

8

disclosure of SSI if it refuses to attend depositions. However, TSA insists that counsel for defendants bear the responsibility of preventing unauthorized disclosure of SSI, and that TSA's lawyers do not have to be present.

**II. DISCUSSION**

*A. Applicable Law and the Conflicting Obligations of Defense Counsel*

1. The Obligations Imposed by TSA Regulations

Created by enactment of the Aviation and Transportation Security Act ("ATSA") in the weeks following September 11, TSA is charged with promulgating the Transportation Security Regulations ("TSRs") which contain rules governing the security of air, land and maritime transportation. ATSA, Pub.L. 107-71, 115 Stat. 597 (2001) (codified at 49 U.S.C. §§ 40101 note). The TSRs specifically regulate the maintenance and safeguarding of SSI. See 49 C.F.R. Part 1520.

SSI is defined, broadly, as "information obtained or developed in the conduct of security activities, including research and development, the disclosure of which the TSA has determined would … be detrimental to the security of transportation." 49 C.F.R. § 1520.5(a)(3). By regulations, sixteen specific categories relating to transportation security are deemed automatically to constitute SSI with no specific determination by TSA required. 49 C.F.R. § 1520.5(b). Information deemed to constitute SSI, either by regulation or TSA determination, does not lose its protection as such unless the information is "obsolete," in the sense that it "will not be revived:"

> only if a security countermeasure is obsolete, in that it will not be
> revived and therefore reveals nothing about current of future
> security countermeasures, or if security intelligence is overtaken
> by events, will information lose its SSI protection and be released
> publicly.

(Final Order II at 2.)

Only persons with a "need to know," or granted conditional access by the TSA pursuant to § 1520.15, are allowed access to SSI. 49 C.F.R. § 1520.5(a), (b). Persons have a need to know when, by virtue of their position, access to SSI is required:

> (1) to carry out transportation security activities that are government-approved, -accepted, -funded, -recommended, or -directed, including for purposes of training on, and supervision of, such activities; (2) to provide legal or technical advice to airport operators, air carriers or their employees regarding security-related requirements; or (3) to represent airport operators, air carriers or their employees in judicial or administrative proceedings regarding security-related requirements."

TSA Final Order I at 2; see also 49 C.F.R. § 1520.11(a). Persons without a need to know may be granted conditional access to SSI if TSA determines "that disclosure of such records or information, subject to such limitations and restrictions as TSA may prescribe, would not be detrimental to transportation security." 49 C.F.R. § 1520.15(e). However, in the wake of September 11, "it has been the consistent policy of TSA that the present and continuing threat of terrorist attacks against aviation interests requires that the number of persons having access to SSI be significantly and continually decreased, rather than increased." (Final Order I at 3.) Thus, TSA has adopted a position of non-disclosure of SSI to litigants in civil cases who do not otherwise have a statutorily defined need to know. (Final Order I at 4.)

A person granted access to SSI assumes an obligation to "[t]ake reasonable steps to safeguard SSI in that person's possession or control from unauthorized disclosure." 49 C.F.R. § 1520.9. Violation of the obligation to protect SSI against unauthorized disclosure "is grounds for a civil penalty or other enforcement or corrective action by [Department of Homeland Security]." Such enforcement or

10

corrective actions may include "issuance of an order requiring retrieval of SSI to remedy unauthorized disclosure or an order to cease future unauthorized disclosure." 49 C.F.R. § 1520.17.

2. Obligations of Counsel to Clients

Under the New York Code of Professional Responsibility, a lawyer assumes the absolute duty to represent his or her client "zealously within the bounds of the law." See N.Y. Code of Prof. Resp. EC 7-1. Such obligation stems from the fundamental premise that "[i]n our government of laws and not of individuals, each member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and *to present for adjudication any lawful claim, issue or defense*." Id. (emphasis added). Thus, in undertaking to represent a client zealously, the lawyer must not intentionally "[p]rejudice or damage the client during the course of the professional relationship[.]" N.Y. Code of Prof. Resp. DR 7-101, 22 NYCRR § 1200.32. The lawyer's obligations run directly to the interests of his client, and it is the client who serves as the lawyer's master throughout the course of the professional relationship. A lawyer who is concerned with the potential legal consequences to him of serving his client zealously is in a position of conflict.

*B. The Parties' Positions as to a Protocol for Depositions*

1. The Plaintiffs' Position

Plaintiffs argue that depositions should proceed pursuant to the procedures set forth in Rule 30(c), Fed. R. Civ. P. (See Joint Letter, dated March 9, 2006 ("March 9 Joint Letter").) Under this approach, plaintiffs propose to ask the witness questions and

expect the witness to answer unless instructed otherwise by defense counsel. Once an objection has been raised, pursuant to Rule 30(c), the questioner may cure the objection by rephrasing the question and the witness may proceed to answer. Fed. R. Civ. P. 30(c). In light of the special concerns presented by potential disclosure of SSI, plaintiffs propose that if the objection is coupled with an instruction by defense counsel that the witness should not answer because the answer may implicate SSI, the questioner would move on to the next question without response from the witness. All objections and exceptions to questions would be deemed preserved. Plaintiffs would then determine whether to seek a ruling on the objections.

Plaintiffs, recognizing that the categorization of answers as including SSI might be uncertain, propose that defense counsel should not have to guess. Plaintiffs acknowledge that "it would be an unconstitutional burden to impose upon counsel the responsibility to 'guess' what answers might involve disclosure of SSI at the risk of statutory and regulatory penalties." (March 9 Joint Letter at 3.) Plaintiffs propose that if TSA declines to attend depositions, it should be deemed to have waived any objections to witnesses' oral answers. Thus, under plaintiffs' proposal "the only SSI in this litigation is in documents that TSA has vetted." (Id.)

2. Defendants' Position

Defendants assert that TSA's position, that defense counsel has an absolute obligation to protect SSI, directly conflicts with their "duty of zealous advocacy and … obligation to ensure that the record reflects the most accurate, complete and persuasive account of their clients' actions," (March 9 Joint Letter at 2) and contend that the protocol proposed by plaintiffs does not alleviate their concerns about the conflicting

12

position in which they are placed. (See id.) Thus, in defendants' view, "the proposed protocol does nothing to resolve the untenable position in which defense counsel would find themselves if they attend a deposition both as enforcers of government policy on the non-disclosure of SSI and as attorneys providing effective representation to their clients, who would otherwise be entitled to have their counsel elicit favorable testimony." (Id.)

As to non-party witnesses, defense counsel object that TSA's position would impose on them an obligation to prevent disclosure without the ability to carry out the obligation, for "a lawyer cannot compel a non-client to heed instructions not to answer." (Id.) Defense counsel note further that, since questions asked of a non-party witness could potentially elicit SSI, they would be forced to formulate questions in a manner that would not elicit SSI and thus would not be acting in the best interests of their client.

3. TSA's Position

TSA asserts that "[i]t is counsel's role, rather than the TSA's, to object to questions and advise witnesses as to how to avoid disclosure of potentially privileged materials in the deposition." (TSA Letter, dated March 1, 2006 ("March 1 Letter"), at 2; see also TSA Letter, dated March 17, 2006 ("March 17 Letter"), at 1.) TSA notes that the regulations expressly provide that those in possession of SSI are obligated to "safeguard SSI … from unauthorized disclosure," 49 C.F.R. § 1520.9(a), and contends that this obligation extends to depositions, imposing an absolute obligation on defense counsel to protect against unwarranted disclosure. Under TSA's proposal, therefore, defense counsel, relying on their knowledge of prior TSA determinations of SSI in various documents, should raise objections to questions likely to implicate SSI material.

13

To the extent that counsel has any doubt as to whether a particular question will elicit SSI, the obligation of defense counsel "is to say that there is an SSI objection." (March 3 Transcript at 52.)

Given the absolute obligation assumed by defense counsel, TSA posits that its participation in the depositions would be neither necessary nor meaningful and, as such, has taken the position that it will not be present at the depositions in this case. Noting that it would be impossible for TSA to do "immediate, real-time SSI review because of the need for careful and detailed examination and analysis of the material in consideration of numerous other documents and information," TSA proposes instead that that its "role is to review the transcripts once they are created to make a final determination as to what is and is not SSI and to redact any SSI from the transcripts." (Id.)

TSA's proposal would require depositions to proceed, not in the normal question-answer manner provided by Rule 30, Fed. R. Civ. P., and customary to depositions, with the reporter and all counsel having been cleared in advance by TSA, but by written questions submitted in advance pursuant to Rule 31, Fed. R. Civ. P., or, alternatively, with plaintiffs' counsel asking questions, stepping out of the room in order not to hear answers that potentially could implicate SSI, and then returning (without the benefit of hearing the witness' answers), to propound further questions. Both plaintiffs and defendants object to TSA's proposal.

C. *The Conduct of Depositions*

The tension that is at the heart of the parties' dispute raises questions central to our justice system. If the parties who elected to proceed by litigation are to

have their day in court, they must have the right to litigate and be represented effectively by their counsel. Congress recognized as much by preserving specifically their right to sue in the Air Transportation Safety and System Stabilization Act. ATSSSA § 408(b). Defendants also must have the ability and right to defend themselves effectively by their counsel. At the same time, the government has the overriding duty to protect and ensure the safety of its citizens, including the duty and right to classify information the disclosure of which might be harmful to the public. As the court charged with presiding over the litigation arising from the terrible events of September 11, my duty is to navigate these competing concerns, all within the limits of my jurisdiction.

The United States District Court for the Southern District of New York was given "original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § 408(b)(3). One of the inherent aspects of that exclusive jurisdictional grant is the right and duty of the court to regulate the proceedings and the counsel who come before it with the aim of advancing the fundamental right under our Constitution of equal justice under the law and the litigants' valid interest in prompt determination of their cases and controversies. Indeed, it is in keeping with my obligation to advance these important interests that I have endeavored to regulate the instant proceedings in such a way as to not render the right of litigation acknowledged by Act of Congress a legal fiction.

My jurisdictional grant, however, is not without bounds and I am ever mindful of the important security concerns that have loomed over this litigation from its inception. TSA is charged with maintaining and safeguarding SSI and I do not seek to

intrude on its jurisdiction or review the wisdom of its determinations. As with administrative agencies generally, petitions for review of TSA's final orders are filed in the Courts of Appeals. 49 U.S.C. § 46110. I have no jurisdiction to review TSA's final orders; and petitions for review of TSA's two final orders have, or soon will be, submitted to the appropriate Court of Appeals. But creation of the TSA did not divest the District Courts of their inherent authority to regulate pre-trial and trial procedures in the cases over which they preside, and to create a proper record of those proceedings for appellate review of their final and, in some cases, interlocutory orders.

The questions presented by the instant litigation sound in negligence and require a determination of whether defendants failed to exercise reasonable care to those whom they owed a duty to exercise such care. See In re September 11 Litigation, 280 F. Supp. 2d 279. By my prior Opinion, I determined that the aviation defendants were in the "best position to provide reasonable protection against hijackings and the dangers they presented, not only to the crew and passengers, but also to ground victims," id. at 294, and thus owed a duty both to those who boarded their planes and to those on the ground. Plaintiffs must now show that the duty owed them was breached. Such proof, however, will elude plaintiffs absent an open and dynamic protocol for depositions whereby questions are propounded and answers provided. TSA's proposed alternatives, allowing for depositions only by written interrogatory or by a procedure requiring plaintiffs to remove themselves from the depositions while responses to their questions are provided, fail to allow plaintiffs to engage in the back and forth so essential to establishing a claim in negligence. Indeed, to bar plaintiffs from conducting live

depositions is to thwart the very intent and purpose of the Act that I am charged with enforcing, and over which I have exclusive jurisdiction.

TSA urges that it does not wish to bar plaintiffs from conducting live depositions, but cautions that, in the context of such depositions, the onus is on defense counsel to protect against unauthorized disclosure of SSI. Such proposal, however, fails to adequately protect the interests of defense counsel and their clients in the conduct of depositions. A lawyer cannot act both as an advocate charged with representing his client's best interests and as an enforcer of government policies, particularly if civil penalties may be imposed if he fails to give precedence to the government's interests.[4] The presence in the deposition room of government lawyers having sole duty to represent TSA is critical. It is they, and not defense counsel, who should have primary obligation to defend and to instruct witnesses possessing potential SSI. Defense counsel's paramount obligation is to his client, and the client in particular and the legal system in general have the right to expect that the lawyer will represent the client "zealously within the bounds of the law." N.Y. Code of Prof. Resp. EC 7-1. One of defense counsel's obligations is to "[t]ake reasonable steps to safeguard SSI in [his or his client's] possession or control from unauthorized disclosure," 49 C.F.R. § 1520.9(a), but that obligation is to be carried out in the best interests of his client, and not as an enforcer of government policy. Given the uncertainty of what is properly classifiable as SSI, and TSA's own changes of attitudes regarding prior classifications, the task of objecting and

---

[4] TSA argues that any alleged conflict is "belied by the fact that, since discovery began in this case, counsel for the Aviation Defendants have routinely asserted SSI objections to document demands seeking documents containing SSI, notwithstanding their own asserted desire to use such documents in the litigation." (TSA March 17 Letter at 2.) The distinction is obvious. In turning over documents for TSA review, defense counsel is not charged with making individual SSI determinations. Such determination is instead left to TSA. As such, defense counsel does not stand in the dual role of counsel and government enforcer.

instructing is beyond the jurisdictional competence of defense counsel, particularly in light of the client's interests in fully responding to proper questions.[5] Thus, the only lawyers who have the obligation to act as enforcer's of TSA's policies are TSA's own lawyers, and it is they, and no one else, who have the responsibility to object and to instruct whenever they, in good faith, believe that SSI may be implicated in a question or an answer. Their attendance at depositions is critical. That is the very reason that they moved to intervene in the case, and the reason that I granted TSA's motion to intervene.

In accordance with the foregoing, and mindful of the important security concerns expressed by TSA, I hold that the depositions should proceed as follows:

1. Plaintiffs' counsel who have clearance from TSA may propound questions to the witness, in the fashion normal to depositions. The witness shall be defended by counsel entitled to read and hear SSI, either pursuant to applicable regulations, 49 C.F.R. §1520.11, or by special clearance. Other parties potentially affected may also attend, and object and cross-examine, as provided by Rule 30(c), Fed. R. Civ. P., provided that they are cleared as well. Counsel for TSA may also attend, and object and cross-examine. None others may attend.

2. The deposition shall be recorded by a certified stenographic reporter who is a member of the pool of reporters in the United States District

---

[5] TSA represents that it "cannot do any immediate, real-time SSI review because of the need for careful and detailed examination and analysis of the material in consideration of numerous other documents and information[.]" (March 1 Letter at 2.) Yet, it cannot expect defense counsel to do that which TSA, by admission, cannot do. TSA's effort to evade the quandary by directing defense counsel, in raising objections to deposition questions and instructing witnesses accordingly, simply to rely on "documents that the TSA has now redacted" to ascertain what information will be deemed to constitute SSI (March 3 Transcript at 52:4-6), is simplistic, and inevitably will tend to shut off all answers, making a mockery of the deposition process.

     Court for the Southern District of New York, and who has been cleared to transcribe depositions potentially containing SSI.

  3. The Reporter shall transcribe only two copies of the deposition, and furnish the same to counsel for the TSA. TSA, within 30 days from receipt, or such longer time as it may reasonably request during said 30-day period, shall determine, and identify on one of the copies of the transcript, which of the answers are SSI. Those answers shall be redacted on the second copy of the transcript, and that redacted copy shall be furnished to the counsel who propounded the questions to the witness, to be served and filed in the manner provided by Rule 30(f), Fed. R. Civ. P.

  4. The first copy of the transcript, reflecting TSA's determinations of SSI, shall be considered its final determinations, subject to appeal to the Courts of Appeals as provided by 49 U.S.C. § 46110. A copy shall be filed under seal in the District Court.

The protocol for depositions having been established by this Opinion, the depositions slated to commence the first week of April are stayed to begin May 1, 2006, subject to revision by agreement of the parties. If, before then, TSA or any party wishes to seek appellate review, that party may move for a stay or other appropriate relief.

**III. CONCLUSION**

  Through express acknowledgement by Congress, those who sustained injuries as a result of the September 11 attacks have the right to seek compensation for their injuries in this court. ATSSSA § 408(b). Litigation, by its very nature, bears a high

degree of risk. Cases do not always survive to have their day in court and may be subject to dismissal on any number of procedural or substantive grounds. By opting out of the Victim Compensation Fund, the litigants currently before me have necessarily assumed the risks inherent in litigation. But they could not reasonably have foreseen that they might be barred by administrative fiat. The task of TSA is formidable, but the severity of the task may not serve as an excuse for barring plaintiffs from asserting the claims allowed them by law.

The court wishes all to understand that it is time, four-and-a-half years after the terrible events of September 11, 2001, that the parties progress to their day in court. As the Special Master brought a final conclusion to those who entered the Victim Compensation Fund, so is the court required to bring a final conclusion to the matters before it. Without such final conclusions, the wounds so grievously opened on that infamous day cannot be bound up.

SO ORDERED.

Dated: New York, New York
March **31**, 2006

_[signature]_
ALVIN K. HELLERSTEIN
United States District Judge