UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                 :
IN RE SEPTEMBER 11TH LITIGATION          :          21 MC 97 (AKH)
                                                                 :
                                                                 :
------------------------------------------------------------------ x
ALVIN K. HELLERSTEIN, U.S.D.J.:

**OPINION AND ORDER REGARDING PUNITIVE AND COMPENSATORY DAMAGES**

There are two motions before me in these 9/11 cases seeking recovery for wrongful death and personal injury against the airlines, airport operators, airport security companies, and aircraft manufacturer: (1) a motion to decide whether Plaintiffs may recover punitive damages against these defendants; and (2) a motion to decide whether Pennsylvania law should govern claims for compensatory damages brought by eight plaintiffs who died on board United Airlines Flight 93, when that airplane crashed into a field near Shanksville, Pennsylvania.

For the reasons stated below, I hold that Plaintiffs may not recover punitive damages, and that the claims for compensatory damages brought by the eight who died on board United Airlines Flight 93 shall be governed by the law of the plaintiff's domicile state.

**Background**

On September 11, 2001, al Qaeda terrorists hijacked four commercial jetliners and made them weapons of mass destruction. The hijackers crashed American Airlines Flight 11 into the North Tower, and United Airlines Flight 175 into the South Tower, of the World Trade Center in New York, American Airlines Flight 77 into the Pentagon in Virginia, and United Airlines Flight 93 into an open field near Shanksville, Pennsylvania. The legal successors of those who died, the persons in the World Trade Center and in the Pentagon who were injured, and those who suffered damage to their property or their insurance subrogees, brought lawsuits against the airlines, airport operators, airport security companies, and the aircraft manufacturer

1

having a connection to the four flights, alleging that Defendants' wrongful behavior proximately caused their injuries. Plaintiffs' master complaints for wrongful death and personal injury demanded relief in the form of compensatory damages and punitive damages; the complaints for property damage sought compensatory damages.

In earlier proceedings in these cases, I denied Defendants' motion to dismiss based on their claim of absence of duty to ground victim plaintiffs, see In re September 11 Litig., 280 F. Supp. 2d 279, 289–97 (S.D.N.Y. 2003), and regulated the pretrial proceedings by several case management orders and discovery rulings, see e.g., In re September 11 Litig., 236 F.R.D. 164 (2006). Of the 95 wrongful death and personal injury cases that were filed in this Court on behalf of 96 victims who opted to pursue traditional tort lawsuits in preference to proceedings before the Special Master of the Victim Compensation Fund, 53 cases have settled, one was dismissed, and 41 cases (on behalf of 42 victims) remain.[1] Discovery proceedings continue for the cases that remain, and for the property damage claims, slowed by the difficulties of filtering depositions and document production through the Transportation Security Administration to assure against disclosure of Sensitive Security Information. See id. With assistance of the parties, several cases have been identified for trials of the issues of damages, with issues of liability to be tried when discovery of those issues is completed.

In anticipation of such trials, and because of the need to define the scope of potential recoveries, Defendants have moved to strike Plaintiffs' claims for punitive damages, and Plaintiffs have moved, in connection with claims arising from the terrorist-related crash of United Airlines Flight 93 in Shanksville, Pennsylvania, for a declaration that Pennsylvania law,

---

[1] Of these 42 victims' claims, five claims arise from American Airlines Flight 11; fifteen arise from American Airlines Flight 77; ten arise from United Airlines Flight 175; and eight arise from United Airlines Flight 93. Four additional claims filed against American and United involve personal injuries sustained at or near the World Trade Center; the precise location where these plaintiffs sustained their injuries is unknown.

2

as the law of the state where the crash occurred, should govern the scope and extent of compensation that a jury may award with respect to those who died aboard that flight. I heard argument on June 14, 2007, and now deliver my rulings.

## Discussion

**I.      Air Transportation Safety and System Stabilization Act**

The Air Transportation Safety and System Stabilization Act ("Stabilization Act") creates a federal cause of action for damages arising from, or in connection with, the terrorist-related aircraft crashes of September 11, 2001, and confers exclusive jurisdiction on the United States District Court of the Southern District of New York to hear such actions. The Act provides aggregate monetary limits of recovery, limiting recoveries against the various aviation defendants to their aggregate insurance coverage. The Act further provides that although the cause of action is federal, the law of the state in which the crash occurred shall be the law for decision, in both its choice of law and its substantive aspects, except to the extent that such law is inconsistent with, or preempted by, federal law. The following excerpts from Section 408 of the Stabilization Act, 49 U.S.C. § 40101 note, set out these provisions.

> (a) In general.
>
>> (1) Liability limited to insurance coverage. Notwithstanding any other provision of law, liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity, arising from the terrorist-related aircraft crashes of September 11, 2001, against an air carrier, aircraft manufacturer, airport sponsor, or person with a property interest in the World Trade Center, on September 11, 2001 … shall not be in an amount greater than the limits of liability insurance coverage maintained by that air carrier, aircraft manufacturer, airport sponsor, or person.
>
>> (2) …
>
>> (3) Limitations on liability for New York City. Liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity arising from the terrorist-related aircraft crashes of September

> 11, 2001, against the City of New York shall not exceed the greater of the city's insurance coverage or $ 350,000,000.
>
> (b) Federal cause of action.
>
> > (1) Availability of action. There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001. Notwithstanding section 40120(c) of title 49, United States Code,[2] this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.
> >
> > (2) Substantive law. The substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law.

Plaintiffs contend that because the Stabilization Act contemplates recoveries of punitive damages, in limiting liability of aviation defendants to their aggregate liability insurance coverage, "whether for compensatory or punitive damages or for contribution or indemnity, arising from the terrorist-related aircraft crashes of September 11, 2001," punitive damages must therefore be recoverable, as a matter of federal law and regardless of whether the relevant state law would allow such recoveries.  In the words of the statute, any inconsistent state law would not be the law for decision.

The phrase "punitive damages" appears twice in the text of the statute.  Stabilization Act § 408(a)(1), (3).  Both times, however, the phrase is used in the context of a limitation on a defendant's liability, not in the context of creating a right or remedy for a plaintiff.  Put another way, the provision in which the words "punitive damages" appears is not "phrased in terms of the persons benefited." Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002).  Rather, the provision is intended to benefit the aviation defendants, not those who sue the aviation defendants, and thus does not create a federal punitive damages remedy.

---

[2] Section 40120(c) provides that "[a] remedy under this part is in addition to any other remedies provided by law."

4

An important purpose of the Stabilization Act was to protect the airlines in particular, and companies involved in aviation generally, against the possibility of ruinous liability arising from the terrorist-related aircraft crashes of September 11, 2001.  See McNally v. Port Authority (In re World Trade Center Disaster Site Litig.), 414 F.3d 352, 377 (2d Cir. 2005) (citing 147 Cong. Rec. S9594 (Sept. 21, 2001) (statement of Sen. McCain); 147 Cong. Rec. H5914 (Sept. 21, 2001) (statement of Rep. Conyers)).   Thus the Act provided that the liability of such companies, in the aggregate, was to be limited to the insurance coverage that they carried. In the context of the airlines' exposure to potentially ruinous liability, and the equity of providing sufficient funds so that all claimants would have equal right to the fullest compensation to which they might be entitled under law, the argument against punitive damage recoveries is strong. Punitive damages are recovered unevenly, in large and small amounts and by different plaintiffs and, in the context of a limited fund, endanger the capacity of the fund to compensate all plaintiffs in accordance with their provable injuries.  If not for the provisions in the Stabilization Act that contemplated the possibility of punitive damage recoveries, Stabilization Act § 408 (a)(1), (3), the Stabilization Act could well be interpreted as expressing a policy against punitive damage recoveries.  See 147 Cong. Rec. S9595 (Sept. 21, 2001) (statement of Sen. Hatch) ("I am pleased that we consolidated the causes of action in one Federal court so that there will be some consistency in the judgments awarded.").[3]

Thus for the reasons stated, I reject Plaintiffs' argument that the Stabilization Act should be interpreted to provide for punitive damage recoveries, even when such a recovery is not allowed under the applicable state's law.  The Stabilization Act neither bars nor provides for

---

[3] Recognizing the possible effect of punitive damages on the availability of settlement funds, Plaintiffs offered to refrain from enforcing punitive damages awards until all other claims, including property damages claims, had been resolved.  See Hearing Tr. at 178–79.  Plaintiffs' suggestion addresses the danger that punitive damages will exhaust Defendants' insurance coverage, but does not address Congress's concern for consistency of award, or the difficulty of administering the proposed escrow-like regime.

5

punitive damages recoveries. Instead, the Act leaves the issue of punitive damages to the state in which the crash occurred, for both choice of law and substantive law principles. Stabilization Act § 408(b)(2). The next step in analysis, therefore, is to analyze the law of the state in which the crash occurred.

## II.     American Airlines Flight 11 and United Airlines Flight 175

American Airlines Flight 11 and United Airlines Flight 175 crashed into the North and South Towers, respectively, of the World Trade Center, in New York. Thus New York law applies, including its choice of law principles. Stabilization Act § 408(b)(2).

New York's choice of law principles require an "interest analysis." Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197 (N.Y. 1985). "Interest analysis" entails finding "the jurisdiction having the greatest interest in the litigation," where the jurisdiction's interest is measured in terms of the "purpose of the particular law in conflict." Id. (internal brackets omitted). The purpose of punitive damages is to regulate standards of conduct. See In re Air Crash at Belle Harbor, 2006 U.S. Dist. Lexis 27387 (S.D.N.Y. 2006) (citing In re Air Crash Disaster near Chicago, 644 F.2d 594, 617 (7th Cir. 1981)); Wang v. Marziani, 885 F. Supp. 74, 77 (S.D.N.Y. 1995). "[W]hen the conflicting rules involve the appropriate standards of conduct … the law of the place of the tort 'will usually have a predominant, if not exclusive, concern.'" Schultz, 65 N.Y.2d at 198 (quoting Babcock v. Jackson, 12 N.Y.2d 473, 483 (N.Y. 1963)). Therefore lex loci delicti—the law of the place of the tort—applies to Plaintiffs' claims for punitive damages.

Where the defendant's misconduct and the plaintiff's injury occur in different jurisdictions, the place of the tort is the jurisdiction where the "last event necessary" to make the defendant liable occurred. Schultz, 65 N.Y.2d at 195. Here, the place of the tort could plausibly

6

be Massachusetts, because defendants screened Flight 11 and Flight 175 hijackers at Logan Airport in Boston, or New York, where the crash, the last event necessary to give rise to wrongful death liability, occurred.  For claims arising out of a "disaster befalling a plane aloft," however, "the place of the crash is often random or, as here, fixed by a warped mind," Pescatore v. Pan American World Airways, Inc., 97 F.3d 1, 13 (2d Cir. 1996) (internal parentheses omitted), and thus legitimate reasons to deviate from the lex loci delicti rule may exist.  See e.g., In re Air Crash at Belle Harbor, supra (applying admiralty law to passengers' punitive damages claims arising out of aircraft disaster in New York).

      Thus, "interest analysis" requires me to consider both the law of Massachusetts and the law of New York.  Both states, it appears, hold that punitive damages are not permissible if the source of recovery would come from insurance funds, a proposition that is more clearly stated in the New York cases, but which neither party disputes.  If, however, a choice must be made between the laws of New York and Massachusetts, I find that New York has the greater interest in having its law applied.

      New York was the target of the terrorists.  As long as it remains the commercial center of the United States and, indeed, of the world, New York will be a target for terrorists.  Although other cities and states may be a target for the depredations of terrorists and, in that sense, as Plaintiffs' counsel argued, no state has "a higher interest than any other in deterring the conduct that led to 9/11," Hearing Tr. at 181 (June 14, 2007), New York has a very strong interest in regulating that which may affect its security, and that of the nation.  See Jason Mazzone, The Security Constitution, 53 U.C.L.A. L. REV. 29, 44 (2005) ("[N]o part of the Union ought to feel more anxiety ... than New York") (quoting THE FEDERALIST NO. 41 (James Madison)).

The attack on the World Trade Center was an attack on the City of New York, the State of New York, and the United States, and Defendants' alleged negligence in failing to prevent the attack had special effect in this jurisdiction. Several thousand New Yorkers were killed, and billions of dollars of New York property was destroyed. New York, rather than the several domiciles of the passengers on board Flights 11 and 175, or of the defendants who were sued in connection with their involvement in those flights, has the greatest interest in applying its conduct-regulating law. For these reasons, I rule that New York's substantive law should govern the issue of Plaintiffs' ability to recover punitive damages. My ruling is consistent with my decision denying Defendants' motion at the outset of this case, applying New York law in relation to the issues of Defendants' duty and proximate cause. See In re Sept 11th Litig., 280 F. Supp. 2d 279, 289 (S.D.N.Y. 2003).

        Plaintiffs concede that, if New York law applies, punitive damages are not available in cases arising under the Stabilization Act. See Hearing Tr. at 181–82. The Stabilization Act requires that damages shall not exceed the limits of liability insurance coverage maintained by Defendants, with the effect that recovery for claims arising under the Act must come from insurance funds, and nowhere else. Because an insurer cannot be compelled to indemnify an insured for punitive damages under any circumstances, see Pub. Serv. Mut. Ins. Co. v. Goldfarb, 53 N.Y.2d 392, 400 (N.Y. 1981), the subrogated insurers in this case cannot be compelled to satisfy a punitive damages judgment. Punitive damages are therefore unavailable as a matter of law, and Defendants' motion to strike the allegations of the Master Complaint claiming punitive damages is GRANTED as to all the defendants affiliated with American Airlines Flight 11 and United Airlines Flight 175.[4]

---

[4] For Massachusetts law to the same effect, see Santos v. Lumbermen's Mut. Cas. Co., 408 Mass. 70, 556 N.E.2d 983 (Mass. 1990).

With respect to American Airlines Flight 77, which crashed in Virginia, the parties agree, assuming the Stabilization Act does not control, that Virginia law applies and that under Virginia law, each physically injured and each wrongful death plaintiff could recover a statutory maximum of $350,000, in the aggregate, from all defendants named in the particular action.  See Hearing Tr. at 161.

### III.     United Airlines Flight 93

Thanks to the brave resistance of the passengers on board United Airlines Flight 93, the aircraft did not reach the terrorists' intended target, presumably the Capitol or White House in Washington, D.C., but crashed, instead, in Pennsylvania.  Thus Pennsylvania law applies, including its choice of law principles.  Stabilization Act § 408(b)(2).

With regard to the eight plaintiffs who sue for wrongful death with respect to United Airlines Flight 93, I am asked to consider the proper choice of law to govern both punitive damages and compensatory damages claims.  Pennsylvania, like New York, requires an "interest analysis" to make choice of law determinations.  The interest analysis for these eight cases is complicated, however, by the different "interests" that might be considered in relation to the different purposes that punitive and compensatory damages serve.  The complication is resolved by making different choices of law for different issues in a single case, as is appropriate in these cases.  See Griffith v. United Airlines, Inc., 416 Pa. 1 (Pa. 1964) ("The state in which the [plane crash] occurred has relatively little interest in the measure of damages to be recovered unless it can be said with certainty that defendant acted in reliance."); Broome v. Antlers' Hunting Club, 595 F.2d 921 (3d Cir. 1979) ("A Pennsylvania court, consonant with the rule of Griffith, supra, would consider applying the law of different states to the separate issues of liability and damages.").

9

A.  Punitive Damages Under Pennsylvania Law

Under Pennsylvania's "interest analysis," the policies of all interested states are considered. Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005). The interested states are the state where the injury occurred; the state where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the state where the relationship between the parties is centered. See Restatement (Second) of Conflict of Laws § 145; Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Center Properties, LLC, 435 F.3d 136, 139 (2d Cir. 2006) (applying Pennsylvania law). Here, the states with the strongest interest in regulating and deterring Defendants' conduct by imposition of punitive damages are Pennsylvania, where United Airlines Flight 93 crashed, and New Jersey, where, at Newark Airport, the hijackers were ticketed and screened. Other states with an interest in Defendants' conduct are Illinois, where United Airlines maintains its principal place of business, Washington, where Boeing maintains its principal place of business and, arguably, Plaintiffs' states of domicile.

In Pennsylvania, New Jersey, Illinois, and Washington, as in New York, an insurer cannot be compelled to indemnify an insured for punitive damages awarded against the insured. See Martin v. Johns-Manville Corp., 508 Pa. 154, 169 (Pa. 1985) ("In Pennsylvania, the function of punitive damages is to deter and punish egregious behavior. Consistent with that theory, [the court] preclude[s] insurance against them."); Johnson & Johnson v. Aetna Cas. & Surety Co., 667 A.2d 1087, 1091 (N.J. App. Div. 1995) ("New Jersey sides with those jurisdictions which proscribe coverage for punitive damage liability because such a result offends public policy and frustrates the purposes of punitive damage awards."); Beaver v. County Mut. Ins. Co., 95 Ill. App. 3d 1122, 1125 (Ill. App. Ct. 1981) ("[P]ublic policy prohibits

10

insurance against liability for punitive damages that arise out of one's own misconduct."); <u>Dailey v. N. Coast Life Ins. Co.</u>, 919 P.2d 589, 590 (Wash. 1996) ("Since its earliest decisions, this court has consistently disapproved punitive damages as contrary to public policy."). As for Plaintiffs' states of domicile, I hold that they have very slight, if any, connection with Defendants' conduct, since no conduct relating to the crash of United Airlines Flight 93 took place in those states.

Thus, I hold that punitive damages are not available in connection with United Airlines Flight 93. Defendants' motion to strike the allegations in the Master Complaint claiming punitive damages is GRANTED as to all defendants, except as to defendant Argenbright Security.

In 2001, the General Services Administration "debarred" Argenbright Security from obtaining federal contracts. <u>See</u> Declaration of Justin B. Kaplan [regarding punitive damages], June 25, 2007, Ex. A (Excluded Parties List System report). In 2002, Congress enacted the Homeland Security Act, which amended the Stabilization Act such that air transportation security companies that had been disbarred for any period within six months of February 17, 2002 were not covered by the Stabilization Act's limits on liability. <u>See</u> Stabilization Act § 402(1); 148 Cong. Rec. H5823 (July 26, 2002) (statement of Rep. Armey); Hearing Tr. at 182. That being the case, a punitive damages recovery against Argenbright can be paid without insurance proceeds, and the limitations of the state laws do not apply. The motion is DENIED as respects Argenbright Security.

    B. <u>Compensatory Damages Under Pennsylvania Law</u>

Different states have strong policy interests with regard to the compensation of their domiciliaries for injuries caused by the faults of others. Thus, a "true" conflict of laws is

11

said to be presented.  See Chappell, 407 F.3d at 170.  The issue of compensatory damages is of greatest interest to the states of Plaintiffs' domiciles, and to the states where Defendants maintain their headquarters or principal places of business.  The state of a plaintiff's domicile has an interest in ensuring that its citizens obtain adequate compensation for injury, see e.g., Griffith, 416 Pa. at 24–25, while the state of a defendant's headquarters or principal place of business has an interest in maintaining the health and vitality of its companies and their employments and in protecting them against undue and unpredictable liability.  See Taylor v. Mooney, 464 F. Supp. 2d 439 (E.D. Pa. 2006) (holding that Georgia's statute of repose barred strict products liability claims arising out of aircraft crash in Pennsylvania).  A true conflict arises with respect to compensatory damages because the many interested states, including Florida, Illinois, New Jersey, New York, Pennsylvania, and Washington, measure compensatory damages in substantially different ways, such that state law favoring Plaintiffs operates to the detriment of states where Defendants maintain their principal place of business, and vice versa.

      Plaintiffs argue that to ensure uniformity of result and adequacy of compensation, Pennsylvania law should apply.  Application of Pennsylvania law would not impair the interests of the states of Plaintiffs' domicile in "the well-being of … surviving dependents," Griffith, 416 Pa. at 25, because, they argue, Pennsylvania law provides for greater recovery than the states of Plaintiffs' domiciles.  See Plaintiffs' Reply at 5 (citing Harsh v. Petroll, 840 A.2d 404, 418 (Pa. Commw. Ct. 2003)).  Plaintiffs' argument disregards, however, the effect that application of Pennsylvania law would have on Defendants, and whether such effect would impair the interests of the states in which Defendants are headquartered or do business—an effect the Stabilization Act explicitly recognized.

Pennsylvania has minimal interest in having its law of compensatory damages applied to these eight pending cases. Pennsylvania rendered some aid to the families of the decedents, conditioned on a right of subrogation up to the full amount of its aid—approximately $20,000 in one case, see Declaration of Justin B. Kaplan [regarding compensatory damages], June 25, 2007, Ex. A (Letter from Suzanne N. Hueston to Donald A. Migliori, Aug. 22, 2006), but that is a minimal interest. The involvement of Pennsylvania, as the state where the crash occurred, is "wholly fortuitous." Kuchinic v. McCrory, 422 Pa. 620, 624 (Pa. 1966) (applying Pennsylvania law to claims arising out of aircraft crash in Georgia); see also Griffith, supra (applying Pennsylvania law to claims arising out of aircraft crash in Colorado); Taylor, supra (applying Georgia law to claims arising out of aircraft crash in Pennsylvania). The terrorist hijackers did not intend to strike Pennsylvania and, alas, the passengers did not select the place of their heroic sacrifice. Nor did Defendants, even if negligent, intend for this disaster to befall Pennsylvania. Unlike the crashes of Flights 11, 77, and 175, the crash of United Airlines Flight 93 was "fortuitous"—a product of unusual and unintended circumstance. Pennsylvania's governmental interest in having its law applied is considerably less than the governmental interest of the parties' domicile states with respect to compensatory damages.

I hold that the law governing the compensatory damages to which each plaintiff is entitled, should he prove his case, shall be the law of the plaintiff's state of domicile. The interest of a plaintiff's domicile state in protecting the well-being of surviving dependents will be fully vindicated by application of its own law. And since each case is unique with respect to the issues of compensation, the interest of uniformity of result is much less important. Cf. Grosshandels-Und Lagerei-Berufsgenossenschaft, 435 F.3d at 139–40 (German subrogation law not applied where it would compromise rules of recovery from Victim Compensation Fund).

Accordingly, for the reasons stated, Plaintiffs' motion for a determination, with respect to United Airlines Flight 93, that Pennsylvania law shall govern the issues of compensatory damages is DENIED. The law for deciding such issues shall be law of the states of Plaintiffs' respective domiciles.

## Conclusion

For the foregoing reasons, Defendants' motion to strike Plaintiffs' claims for punitive damages is GRANTED, except as to claims against Argenbright Security, and Plaintiffs' motion for a determination that Pennsylvania law shall apply to their claims for compensatory damages arising out of United Airlines Flight 93 is DENIED.

SO ORDERED.

Date:   July 3, 2007
        New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Court