UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                          :

                                          :

IN RE SEPTEMBER 11, 2001 LITIGATION     :      21 MC 97 (AKH)

                                          :

-------------------------------------------------------------x

**This Document Relates Only To**:

***Ambrose v. American Airlines, et al.***           02 CV 7150 (AKH)

**PLAINTIFFS' OPPOSITION TO AVIATION DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF LOSS OF INCOME OF DECEDENT PAUL AMBROSE
& THE MENTAL ANGUISH OF HIS PARENTS SHARON & KENNETH AMBROSE**

MOTLEY RICE LLC
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, SC  29465
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
Ronald L. Motley, Esquire
Donald A. Migliori, Esquire
Mary Schiavo, Esquire
*Liaison Counsel for Wrongful Death &
Personal Injury Plaintiffs*

*On the Brief:*
Vincent I. Parrett (VP 5092)
MOTLEY RICE LLC

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

I.   EVIDENCE OF DECEDENT'S LOST INCOME IS RELEVANT TO
     PLAINTIFFS' RECOVERY FOR LOST INCOME OF DECEDENT ..................... 7

   A.   Legal Standard for Relevance of Damages Evidence ................................ 7

   B.   Evidence Of Decedent's Lost Income Is Relevant & Admissible To Prove
        Lost Income Damages Under Va. Code Ann. §8.01-52(2) ......................... 8

II.  EVIDENCE OF EVENTS & INJURIES INFLICTED ON THEIR SON ABOARD
     FLIGHT 77 IS RELEVANT TO PLAINTIFFS' MENTAL ANGUISH .................. 13

   A.   Under Virginia Law, Plaintiffs Are Entitled To Recover For Their Mental
        Anguish Arising From The Death Of Their Son Aboard Flight 77 ................ 13

   B.   Evidence That Makes Plaintiffs' Mental Anguish More Probable Is Relevant .... 14

   C.   Evidence Of The Events & Injuries Inflicted On Their Son Aboard Flight 77
        Is Relevant Because It Makes Plaintiffs' Mental Anguish More Probable .......... 15

   D.   Defendants Deliberately Confuse The Issue Of Plaintiffs' Mental Anguish
        With The Non-Issue Of Decedent's Pre-Death Pain & Suffering. ........................ 18

   E.   A Limiting Instruction Will Prevent Confusion Of Issues ...................................... 21

CONCLUSION ........................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*American Home Assur. Co. v. Merck*, 462 F. Supp.2d 435 (S.D.N.Y. 2006) .............................................21
*Baumgart v. Transoceanic Cable Ship Co*., 2003 WL 22520034  (S.D.N.Y. Nov. 7, 2003) ....................21
*Contemporary Mission, Inc. v. Famous Music Corp*., 557 F.2d 918 (2d Cir. 1977) .........................7, 9, 12
*El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483 (4th Cir. 1986) .........................................19, 20
*Entis v. Atlantic Wire & Cable Corp.*, 335 F.2d 758 (2d Cir. 1964)…………………………………………8
*Guidi v. Inter-Continental Hotel*, 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) ......................................20
*Huddleston v. United States*, 485 U.S. 681 (1988) ......................................................................................5
*Manley v. Ambase Corp.*, 337 F.3d 237 (2d Cir. 2003) ...........................................................................21
*Mullins v. Seals*, 562 F.2d 326 (4th Cir. 1977) .........................................................................................4
*Perma Research & Development v. Singer*, 542 F.2d 111 (2d Cir. 1976)…………………………………8
*Schwab v. Philip Morris USA, Inc.*, 449 F. Supp.2d 992 (E.D.N.Y. 2006) .........................................7, 12
*Stebbins v. Clark*, 5 Fed. App. 196 (4th Cir. 2001)...........................................................................8, 12, 13

### <u>State Cases</u>

*Balt. & Ohio R.R. Co. v. Noell's*, 32 Gratt. 394, 73 Va. 394, 1879 WL 5415 (1879) ..........................11, 12
*Branham v. Maggard*, 42 Va. Cir. 86 (Va. Cir. Ct. 1997) ...................................................................passim
*Cassady v. Martin*, 220 Va. 1093 (1980) .........................................................................................3, 4, 9
*Colonial Coal & Coke Co.*, 114 Va. 24, 75 S.E. 775 (1912) .....................................................................11
*Fritterman v. Waziri*, 259 Va. 540 (2000) ........................................................................................14, 15
*Gough v. Shaner*, 197 Va. 572 (1955) ....................................................................................................11
*Graddy v. Hatchett*, 233 Va. 65 (1987)...............................................................................................9, 11
*Howell v. Cahoon*, 236 Va. 3 (1988) .....................................................................................................4, 9
*Johnson v. Smith*, 241 Va. 396 (1991) .............................................................................................11, 13, 14
*Marshall v. Goughnour*, 221 Va. 265 (1980) ......................................................................................2, 9, 10
*Poffenbarger v. Nicolet*, 12 Va. Cir. 64 (Va. Cir. Ct. 1986) ...........................................................15, 16, 19
*Rice v. Charles*, 260 Va. 157 (2000)........................................................................................................14
*Shepard v. Capitol Foundry of Virginia*, 262 Va. 715 (2001) ...................................................................15
*Virginia Iron, Coal and Coke Co. v. Odel's Adm'r*, 128 Va. 280 (Va. 1920) .................................16, 17, 19
*Wortham v. Virginia Physicians, Inc.*, 46 Va. Cir. 63 (Va. Cir. Ct. 1998) ...............................................16

### <u>State Statutes</u>

Va. Code Ann §8.01-52 ...........................................................................................................................passim
Va. Code Ann. § 8.01-53 .............................................................................................................................. 1

### <u>Federal Rules</u>

Fed.R.Evid. 105 ......................................................................................................................................7, 21
Fed.R.Evid. 401 .....................................................................................................................................passim
Fed.R.Evid. 402 ..........................................................................................................................................19
Fed.R.Evid. 403 ......................................................................................................................................6, 19

## INTRODUCTION

Plaintiffs Sharon and Dr. Kenneth Paul Ambrose ("Plaintiffs") are the surviving parents of Paul Ambrose, M.D., who was killed on American Airlines Flight 77.  Under Virginia's wrongful death statute, plaintiffs are beneficiaries entitled to recover wrongful death damages. Va. Code. Ann. § 8.01-53.  Among other things, plaintiffs are entitled to recover for:

1.      "Sorrow, mental anguish [and]"

2.      "Compensation for reasonably expected loss of income of the decedent . . . ."

Va. Code. Ann. § 8.01-52(1) & (2).

Before addressing defendants' evidentiary issues, we first beseech the Court to review the Joint Declaration of Sharon & Dr. Kenneth Ambrose ("Ambrose Declaration"), attached hereto. The events and injuries inflicted on their son aboard Flight 77, including at the Pentagon crash site, have caused plaintiffs palpable mental anguish.  *See* Ambrose Declaration ¶¶1-6, 14-15. The last images of their son alive, surrounded by the hijackers as they breezed through the Dulles Airport checkpoint, haunt plaintiffs.  *Id.* ¶ 2, 15.  If defendants think otherwise, they are welcome to cross-examine plaintiffs before the jury.  Likewise, plaintiffs did reasonably expect that their son, Paul Ambrose, M.D., would provide them financial support as they grew old together.  *Id.* ¶¶ 7-11.  If defendants disagree, cross-examination is their recourse.

Now defendants ask the Court to exclude evidence that tends to make more probable: (1) plaintiffs' mental anguish arising from the events and injuries inflicted on their son aboard Flight 77, and (2) the lost income of their son.  *See* Def. Brief at 1-2.  Defendants ask the Court to exclude this relevant evidence on the ground that it is "irrelevant."  Def. Brief at 1.

Defendants do say that "a ruling excluding evidence of lost income or earning capacity would simplify this case meaningfully."  Def. Brief at 9.  Under their "simplify-this-case" rule of

evidence, defendants specifically seek to exclude plaintiffs' expert testimony on decedent's lost income and earning capacity.  *Id.*  But defendants ignore that the plain text of Virginia's wrongful death statute states that expert testimony on decedent's lost income is admissible: "Competent expert testimony shall be admissible in proving damages recoverable under 2 above."  Va. Code. Ann. § 8.01-52, *supra*.

Indeed, the Virginia Circuit Court has explained that Virginia's wrongful death "statute was amended to allow that competent expert testimony should be admissible in proving damages recoverable for this loss" of income of the decedent under Section 8.01-52(2).  *Branham v. Maggard*, 42 Va. Cir. 86, 87 (Va. Cir. Ct. 1997)(admitting expert testimony on decedent's projected lost income under Section 8.01-52(2) where decedent was providing *no support* to his estranged wife and children at time of death; further noting that "defendant is protected in that he can cross-examine the plaintiff's expert on what income is reasonably expected to be received by the plaintiffs from the decedent and/or offer whatever expert testimony he desires").  At best, it is strange for defendants to insist that expert testimony on decedent's lost income is irrelevant and inadmissible when the plain text of Virginia's wrongful death statute states that such expert testimony "shall be admissible" to prove decedent's lost income.  Va. Code. Ann. § 8.01-52.

To be fair, defendants may cross-examine plaintiffs' witnesses as to "how much" of decedent's future income that plaintiffs reasonably expected to receive.  *Branham*, 42 Va. Cir. at 88 ("the manner in which this is challenged is through cross-examination.  Of course, in this case, the Court would give leeway for the for the defendant to cross-examine as to how much of the money would go for the benefit of the wife or children, based upon all the circumstances then existing").  Yet given that financial dependency is *not* a prerequisite to recover decedent's lost income under Virginia law, *Marshall v. Goughnour*, 221 Va. 265, 272 (1980), all of defendants'

arguments to "exclude" evidence of decedent's lost income – *e.g.,* that plaintiffs were "never financially dependent upon Paul Ambrose" and would not "need to look to their son for financial assistance" because "[t]hey were earning a substantial living," Def. Brief at 7-8 – are mere topics for cross-examination. *Branham*, 42 Va. Cir. at 87-88.

Defendants' problem is that they are "confus[ing] questions of admissibility and questions of the sufficiency of the evidence" of decedent's lost income.   Fed.R.Evid. 401 Advisory Committee Notes.  An expert's projection of decedent's lost income is *relevant* under Rule 401 (as it tends to prove a fact of consequence) to the issue of how much of that lost income plaintiffs reasonably expected to receive; logically, when determining how much of the projected lost income the beneficiaries "could reasonably expect to receive from a decedent, an element for consideration by the jury would be how much total income was available." *Branham*, 42 Va. Cir. at 87.  And while defendants in closing argument may well contend that plaintiffs' proof of lost income is insufficient to warrant recovery under Section 8.01-52(2), defendants ought not confuse admissibility with sufficiency of proof at this pretrial stage.

Defendants further err by arguing that *admissibility* of evidence of decedent's lost income depends on whether plaintiffs were financially dependent upon decedent at time of death. Defendants say that "absent financial dependency it is very difficult to make a non-speculative showing of an expectation of future support."  Def. Brief at 7.  Defendants thereby leap from "dependency" to "speculation" to "inadmissibility."   But Virginia wrongful death cases do not make those leaps.   No Virginia court has held that evidence of decedent's lost income is inadmissible *because* the statutory beneficiaries were not financially dependent on decedent.

None of the Virginia cases that defendants cite tie admissibility to financial dependency. The *reason* the Court in *Cassady v. Martin*, 220 Va. 1093 (1980), Def. Brief at 8, excluded

evidence of decedent's projected lost income as "speculative" had nothing to do with whether plaintiff was dependent on decedent.  Rather, evidence of projected lost income was excluded as speculative because:

> [t]his decedent had a mental age of nine and was a functional illiterate who could only write his name.  The decedent's only employment noted in the record commenced five days after [his] child was born, and continued for only eight weeks, during which time he lost six or seven days.

*Cassady*, 220 Va. at 1100.  In other words, the Court excluded the lost income projection because there was no foundation upon which to project income given this decedent's stunted mental powers and ephemeral employment history.  But admissibility was not linked to "financial dependency."

Likewise in *Howell v. Cahoon*, 236 Va. 3 (1988), Def. Brief at 8, the Court rejected evidence of projected lost income that an 18-year-old decedent *might* have earned as an architect, because there was no foundation laid that the decedent "would have become an architect [and] would have been sufficiently successfully financially" to provide support to his mother and brother.  *Id.* at 8.  Likewise, in *Mullins v. Seals*, 562 F.2d 326 (4th Cir. 1977), Def. Brief at 6, the Court rejected evidence of the projected lost income of a 14-year-old decedent as a college-educated employee because there was no basis for that projection:

> [Decedent's] only job had been baby-sitting. . . .  [The expert] did not know whether she would have attended college or the percentage of females similarly situated who do attend college.  Nor did he know how much the [decedent] would have earned had she lived, indeed, whether she would have ever sought substantial employment. . . .

*Mullins*, 526 at 328.

Beyond erring by tying admissibility to financial dependency, defendants err by arguing that the above decisions excluding the lost income projections for "a mentally retarded 21-year-old," *Cassady,* an 18-year-old who "planned" someday to become an architect, *Howell*, and a 14-

year-old baby-sitter, *Mullins*, lead inexorably to the conclusion that "[e]vidence about Paul Ambrose's earning capacity is therefore inadmissible." Def. Brief at. 9. Nonsense. There simply was no foundation upon which experts could base lost income projections for those decedents; *that* was the reason the projections were excluded as "speculative" in *Cassady, Howell,* and *Mullins*. In contrast, Paul Ambrose, M.D., was a 32-year-old, distinguished doctor specializing in Preventative Medicine when he was killed, who had completed his residency at Dartmouth, had received his master's degree in Public Health from Harvard, and was selected in 2000 to work with top officials in the United States Department of Health and Human Services ("HHS"). Former U.S. Surgeon General C. Everett Koop, who worked closely with Dr. Ambrose, will testify that "Paul would have gone on to roles of Surgeon General of the United States, the cabinet position of HHS, Senior Delegate to the World Health Organization and eventually be Dean of a major school of public health." Given this foundation for the lost income projection of Dr. Ambrose, the projection of his lost income is admissible.

Another problem with defendants' brief is that it refuses to recognize that the basic standard of relevance in the Federal Rules of Evidence is a liberal one. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *Huddleston v. United States*, 485 U.S. 681, 687 (1988)(defining as relevant "evidence that makes the existence of any fact at issue more or less probable"). Here, as Section 8.01-52(1) of the Virginia wrongful death statute entitles plaintiffs to recover for their "sorrow [and] mental anguish," any evidence that makes the existence of their sorrow and mental anguish arising from the death of their son aboard Flight 77 more probable is relevant.

And because plaintiffs' knowledge of the events and injuries inflicted on their son aboard Flight 77 makes plaintiffs' mental anguish more probable, such evidence is relevant.  *See* Ambrose Declaration ¶¶2-6, 14-15.   Likewise, because plaintiffs' knowledge of the injuries inflicted on their son when Flight 77 tore through the Pentagon makes plaintiffs' mental anguish more probable, such evidence is relevant.  *Id.* ¶ 6,14  Likewise, because the Dulles checkpoint video – the *last image* plaintiffs have of Paul – showing the hijackers near Paul breezing through checkpoint security makes plaintiffs' mental anguish more probable, such evidence is relevant. *Id.* ¶¶2,15

Defendants seek to exclude that relevant evidence of plaintiffs' mental anguish by:  (1) feigning that such evidence has "no relevance to the jury's task of computing compensatory damages under Virginia law," Def. Brief. at 11  n.3, (2) *themselves* confusing issues by raising a straw man that decedent's pre-death pain and suffering is not recoverable, *id.* at 9-14, and (3) in turn using their straw man to protest under Rule 403 that the *jury* will "confuse" the issue of plaintiffs' mental anguish with the non-issue of decedent's pre-death pain and suffering.  *Id.* at 14-17.

Defendants protest too much.  First, as explained above, plaintiffs' mental anguish is an element of damages recoverable under Virginia law, Va. Code. Ann. § 8.01-52(1), and evidence of the known events and injuries inflicted on their son aboard Flight 77 is relevant as it tends to make more probable plaintiffs' mental anguish.  *See* Ambrose Declaration ¶¶1-6, 14-15.  Second, plaintiffs *agree* that they may not recover for their son's pre-death pain and suffering.  That is not at issue.  There is no "confusion" on this point.  At this damages trial, evidence of the events and injuries inflicted aboard Flight 77 and at the Pentagon crash site is relevant only to establish *plaintiffs'* mental anguish.  Thus, defendants' overwrought protest over "confusion" of issues is

easily cured by a limiting instruction under Rule 105.  *See* Fed.R.Evid. 105 ("the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly").

Tellingly, defendants' brief never mentions Rule 105.

## ARGUMENT

I.   **EVIDENCE OF DECEDENT'S LOST INCOME IS RELEVANT TO PLAINTIFFS' RECOVERY FOR LOST INCOME OF DECEDENT.**

### A.   Legal Standard for Relevance of Damages Evidence

Because Virginia law entitles plaintiffs to recover for the "reasonably expected loss of income of the decedent," Va. Code. Ann. § 8.01-52(2), a fact of consequence to the jury's determination *is* the lost income of decedent.  Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable."  Fed.R.Evid. 401.  Applying that liberal standard of relevancy to prospective damages evidence, the Second Circuit instructs:

> [T]he test for admissibility of evidence concerning prospective damages is whether the evidence has any tendency to show their probable amount. The plaintiff need only show a 'stable foundation for a reasonable estimate.'. . . Evidence need not be conclusive in order to be relevant.

*Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926-27 (2d Cir. 1977); *see also*, *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp.2d 992, 1065-66 (E.D.N.Y. 2006)(same).

Hence, evidence that tends to prove the probable amount of the lost income of Paul Ambrose, M.D., is relevant and admissible to help the jury evaluate damages recoverable for his lost income under Section 8.01-52(2).

When defendants argue that "it is *impossible* for the plaintiffs to prove what portion, if any, of his income Paul Ambrose would have provided to them," Def. Brief at 9, defendants confuse admissibility of lost income evidence with their ideas of sufficiency of proof, and also

forget that the "risk of uncertainty as to the amount of damages is upon the wrongdoer." *Schwab*, 440 F. Supp.2d at 1065 (citing *Perma Research & Development v. Singer*, 542 F.2d 111, 116 (2d Cir. 1976)).  As put by Judge Jack Weinstein, "[a]n estimate of damages, even when well-founded, 'necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection.'"  *Schwab*, 440 F. Supp.2d at 1065-66 (citing *Entis v. Atlantic Wire & Cable Corp.*, 335 F.2d 758, 763 (2d Cir. 1964)).

Accordingly, Plaintiffs are entitled to put their well-founded evidence of the lost income of Paul Ambrose, M.D., before the jury; and then the jury – *not* defense counsel – shall decide whether lost income damages have been proven under Section 8.01-52(2).  *See Stebbins v. Clark*, 5 Fed. App. 196, 202 (4th Cir. 2001)(evaluating damages awarded by jury under Section 8.01-52(2), "[i]t was within the province of the jury to decide whether the amount *testified to by the expert* was accurate and what portion of decedent's lifetime earnings [plaintiff] was entitled to receive").

**B.**  **Evidence Of Decedent's Lost Income Is Relevant & Admissible To Prove Lost Income Damages Under Va. Code Ann. §8.01-52(2)**

Defendants' arguments against *admissibility* of evidence of the lost income and earnings capacity of Paul Ambrose, M.D., are specious for several reasons.

First, the plain text of Va. Code Ann §8.01-52 states that "[c]ompetent expert testimony shall be admissible in proving damages recoverable under 2 above."  And Section 8.01-52(2) entitles plaintiffs to recover "[c]ompensation for reasonably expected loss of income of the decedent. . . ."  Clearly, the Virginia wrongful death statute itself recognizes the relevancy and admissibility of expert evidence to prove decedent's lost income under Section 8.01-52(2).

*Branham*, 42 Va. Cir. at 87 ("statute was amended to allow that competent expert testimony should be admissible in proving damages recoverable for this loss.").

Second, under Rule 401, evidence of decedent's lost income is relevant because it has a tendency to make more probable the amount of decedent's lost income that plaintiffs might reasonably expect to receive under Section 8.01-52(2).  *See* Ambrose Declaration ¶7-12; *Contemporary Mission*, 557 F.2d at 926 (test for admissibility of evidence concerning prospective damages is whether the evidence has any tendency to show their probable amount); *Branham*, 42 Va. Cir. at 87 (under Section 8.01-52(2), finding expert testimony relevant because in deciding how much the beneficiaries "could reasonably expect to receive from a decedent, an element for consideration by the jury would be how much total income was available").

Third, as explained in the Introduction above, defendants' efforts to tie admissibility of lost income evidence to whether plaintiffs were "financially dependent" on decedent fail.  Def. Brief at 3, 6-9.  Financial dependency is not a prerequisite to recovery under Section 8.01-52(2). *Marshall,* 221 Va. at 272; *see also, Graddy v. Hatchett*, 233 Va. 65, 71 (1987)(same).  And the cases defendants cite in support of their admissibility-hinges-on-dependency argument say no such thing.  *Cassady,* Def. Brief at 8, *Howell,* Def. Brief at 8, and *Mullins*, Def. Brief at 6.  The *reason* that *Cassady, Howell*, and *Mullins* excluded lost income projections for "a mentally retarded 21-year-old," *Cassady,* an 18-year-old who "planned" someday to become an architect, *Howell*, and a 14-year-old baby-sitter, was because there was no foundation upon which to project lost income for those young decedents.  *Cassady*, 220 Va. at 1100; *Howell,* 236 Va. at 8; *Mullins*, 526 at 328.  To use the words of the Second Circuit, there was no "stable foundation for a reasonable estimate."  *Contemporary Mission,* 557 F.2d at 926.  Admissibility did *not* turn on financial dependency.

Doggedly refusing to let go of to their erroneous admissibility-hinges-on-dependency theory that "absent financial dependency it is very difficult to make a non-speculative showing of an expectation of future support," defendants even resort to citing *Marshall*, 21 Va. 265.  Def. Brief at 7.  But the Virginia Supreme Court in *Marshall* expressly *rejected* that argument linking admissibility of decedent's lost income to plaintiffs' financial dependency.  There, the ***trial*** court's instruction had "eliminated from the jury's consideration any award for loss of income" on the sole ground that decedent's beneficiary "was not a dependent."  *Id.* at 271.  On appeal, plaintiff challenged that ruling by arguing that the Virginia wrongful death statute "eliminated the requirement that financial or pecuniary loss be limited to that suffered by dependents."  *Id.* at 272.  And the Supreme Court in *Marshall* expressly "agree[d]" with plaintiff that "[d]ependency is not a prerequisite to recovery" and thus found that the trial court "***incorrectly bas[ed] its ruling upon non-dependency***."  *Id.* at 272-73 (emphasis added).  The only reason the Supreme Court went on to affirm the jury instruction eliminating consideration of a lost income award was *not* "dependency" – which the Court rejected – but rather lack of foundation:   "[i]n the present case there was *no evidence* proffered as to loss of income suffered by the statutory beneficiary as a result of [decedent's] death."  *Id.* at 272 (emphasis added).  Again, admissibility did not turn on financial dependency.

Indeed, to accept defendants' dependency-based theory of lost income evidence the Court would need to reject over a century of Virginia wrongful death precedent awarding lost income damages to beneficiaries who were not financially dependent on decedent.  For example, in *Branham*, 42 Va. Cir. at 86 (1997), defendant objected to the admissibility of expert testimony on decedent's lost income on the ground that plaintiffs were not financially dependent on decedent as "there was no child support nor spousal support being paid at the time of the

accident." *Id.* at 86.  Rejecting that dependency-based admissibility argument, *Branham* noted that Section 8.01-52(2) expressly states that "expert testimony should be admissible in proving damages recoverable for this loss," and that projected loss income evidence is quite relevant because before a jury can decide what income plaintiffs "could reasonably expect to receive from a decedent, an element for consideration by the jury would be how much total income was available." *Id.*

Moreover, *Branham* noted that the Virginia Supreme Court in the wrongful death case of *Johnson v. Smith*, 241 Va. 396, 399 (1991), "allowed, upon some background information being placed before the jury, the expert to testify to the estimated loss of income from the death." *Branham*, 42 Va. Cir. at 87.  Accordingly, even absent financial dependency, *Branham* held that evidence of decedent's lost income "is admissible evidence provided there can be some reliability of the particular facts, as in the *Johnson* case, the decedent had a 5-year work record, was in good health, etc."  *Id.; see also, Graddy*, 233 Va. at 71 (allowing recovery "whether or not the beneficiaries can establish their dependency on the decedent.  Accordingly, the expectancy of continued life of the decedent is *relevant and necessary* to establish the extent of loss"); *Gough v. Shaner*, 197 Va. 572, 580 (1955)(affirming award of lost future earnings to parents of 13-year old decedent because jurors have the right on the "evidence to form their conclusions as to what was decedent's probable life expectancy and consider what they, in their sound judgment, thought would be his probable earnings in the future"); *Colonial Coal & Coke Co.*, 114 Va. 24, 75 S.E. 775, 777 (1912)("recovery with us is for the wrongful death, and not merely because there are dependent relatives, and therefore the right of recovery is not affected by the absence of relatives*, or by the fact that surviving beneficiaries are wealthy or poor.*"); *Balt. & Ohio R.R. Co. v. Noell's*, 32 Gratt. 394, 73 Va. 394, 1879 WL 5415 at *6 (1879)

(affirming jury instruction to award 58-year old mother of deceased adult child "the probable earnings of the deceased; taking into consideration the age, business capacity, experience, habits, health, energy, and perseverance of the deceased during what would probably have been his lifetime, and the lifetime of his mother, if he had not been killed").

Here, plaintiffs' expert projection on the lost income of Paul Ambrose, M.D., is relevant and well founded on his distinguished experience, education, professional career, capacity, habits, health, energy, and perseverance.  As explained in the Introduction, Paul was a 32-year-old medical doctor specializing in Preventative Medicine, who had completed his residency at Dartmouth, had received his master's degree in Public Health from Harvard, and was selected in 2000 to work with top officials in the United States Department of Health and Human Services ("HHS").   Former U.S. Surgeon General C. Everett Koop, who worked closely with Dr. Ambrose, will testify that "Paul would have gone on to roles of Surgeon General of the United States, the cabinet position of HHS, Senior Delegate to the World Health Organization and eventually be Dean of a major school of public health."   Given this "stable foundation" for a reasonable projection of Dr. Ambrose's lost income, the projection is admissible.  *Contemporary Mission, Inc.*, 557 F.2d at 926; *Schwab,* 449 F. Supp.2d at 1065; *Branham*, 42 Va. Cir. at 87.

Oddly, the final case defendants cite in support of their argument to exclude expert evidence of decedent's lost income is *Stebbins v. Clark*, 5 Fed. Appx. 196 (4th Cir. 2001).  Def. Brief at 9.  But in *Stebbins* "*extensive*" expert evidence of lost income was admitted!  None was excluded.  The issue in *Stebbins* was whether the relatively modest amount of the jury's award of lost income damages under Section 8.01-52(2) was inadequate as a matter of law *in light of plaintiff's expert testimony presented to the jury on decedent' substantial projected lost income*:

> [Plaintiff Stebbins] offered extensive testimony about the economic loss that resulted
> from the death of his wife.  Stebbins's wife was 30 years old at the time of her death and

had a normal life expectancy of 80 years.  She had worked at Crestar Mortgage, earning $27,700 dollars per year, and Stebbins offered testimony from her supervisor related to her work ethic and the likelihood of advancement in her position.  Dr. Norman Edwards, Professor of Economics at the University of Richmond, testified for Stebbins as an expert witness.  Dr. Edwards testified that the death of Stebbins' wife resulted in an economic loss of $780,055. . . .  Stebbins argues that the disparity between the amount of economic loss testified to by Stebbins's expert and the amount awarded by the jury shows that the verdict was unfair and inadequate.

*Id.* at 198-99, 202.  The *Stebbins* Court never questioned that plaintiffs' "extensive" evidence on decedent's lost income was relevant and admissible.  Quite the contrary.  After noting that "Virginia law provides that it is not the expected total earnings of a decedent that are to be awarded to beneficiaries, but instead the portion of those earnings that the beneficiaries might reasonably expect to receive," *id.* at 202, the Fourth Circuit made crystal clear that "[i]t was *within the province of the jury to decide whether the amount testified to by the expert was accurate* and what portion of the decedent's lifetime earnings Stebbins was entitled to receive." *Id.* (emphasis added).  The 4th Circuit thereby confirmed that plaintiffs' expert testimony on decedent's lost income *is* properly considered by the jury when evaluating lost income damages under Section 8.01-52(2).  Thus, *Stebbins* undercuts defendants' position to exclude that evidence now.

## II.   EVIDENCE OF EVENTS & INJURIES INFLICTED ON THEIR SON ABOARD FLIGHT 77 IS RELEVANT TO PLAINTIFFS' MENTAL ANGUISH

### A.   Under Virginia Law, Plaintiffs Are Entitled To Recover For Their Mental Anguish Arising From The Death Of Their Son Aboard Flight 77

Under Virginia law, the verdict in a wrongful death action "shall include, but may not be limited to, damages for . . . sorrow [and] mental anguish" of the beneficiaries.  Va. Code. Ann. § 8.01-52(1).  Virginia law is so clear on this point that the Virginia Supreme Court has repeatedly held that a verdict that does not provide recovery for the mental anguish of a decedent's beneficiaries is "incomprehensible" and inadequate as a matter of law.  *Johnson, Adm'r v. Smith*,

241 Va. 396, 400 (1991); *Rice v. Charles*, 260 Va. 157, 169 (2000)(same)("the evidence at trial clearly supported the conclusion that [decedent's] statutory beneficiaries experienced sorrow, mental anguish, and loss of solace as a result of [decedent's] death.  Thus, they were entitled to compensation for these elements of damages.").  Hence, plaintiffs are entitled to recover for their mental anguish arising from the death of their son aboard Flight 77.

### B.       Evidence That Makes Plaintiffs' Mental Anguish More Probable Is Relevant

Because Virginia law entitles plaintiffs to recover for their mental anguish, Va. Code. Ann. § 8.01-52(1), a fact of consequence to the jury's determination *is* plaintiffs' mental anguish arising from the death of their son aboard Flight 77.  Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable."  Fed.R.Evid. 401.  Hence, evidence that makes the existence of plaintiffs' mental anguish arising from the death of their son aboard Flight 77 more probable is relevant.

Indeed, the relevance and admissibility of evidence tending to prove beneficiaries' mental anguish under Virginia law is so obvious that the Virginia Supreme Court has routinely found evidence of mental anguish not only admissible but *sufficient* to uphold large wrongful death awards.  *Fritterman v. Waziri*, 259 Va. 540, 554-555 (2000)("We find the evidence of sorrow, mental anguish, and solace contained in this record fully sufficient to support the jury's award"); *Shepard v. Capitol Foundry of Virginia*, 262 Va. 715, 723 (2001)("evidence of sorrow, mental anguish, and solace can be sufficient to support a jury's award" under "Code § 8.01-52").

**C.**      **Evidence Of The Events & Injuries Inflicted On Their Son Aboard Flight 77 Is Relevant Because It Makes Plaintiffs' Mental Anguish More Probable**

Because plaintiffs' knowledge of the events and injuries inflicted on their son aboard Flight 77 makes plaintiffs' mental anguish more probable, such evidence is relevant.  *See* Ambrose Declaration ¶¶1-6,14-15.   Likewise, because plaintiffs' knowledge of the injuries inflicted on their son when Flight 77 tore through the Pentagon makes plaintiffs' mental anguish more probable, such evidence is relevant.  *Id.* ¶ 6,14.  Likewise, because the Dulles checkpoint video – the *last image* plaintiffs have of Paul – showing the hijackers near Paul passing unabated through checkpoint security before boarding Flight 77 makes plaintiffs' mental anguish more probable, such evidence is relevant. *Id.* ¶¶2,15; *see also,* Fed.R.Evid. 401.

Defendants confuse relevancy with weight when they argue that "the events that took place on the airplane before it crashed are irrelevant" and have "no bearing on any element of damages that is recoverable under Virginia law."  Def. Brief at 3, 11.  Nonsense.  Plaintiffs' mental anguish is an element of damages recoverable under Virginia law.  Va. Code. Ann. § 8.01-52(1).  Evidence that tends to make plaintiffs' mental anguish more probable is relevant, Fed.R.Evid. 401, and Virginia courts routinely admit evidence of beneficiaries' mental anguish. *See, e.g., Rice,* 260 Va. at 169,  *Fritterman,* 259 Va. at 554-555, *supra.*  Here, evidence of the events and injuries inflicted on their son aboard Flight 77 tend to make plaintiffs' mental anguish more probable.  Hence, such evidence is relevant.

Indeed, the very cases defendants cite recognize that plaintiffs' mental anguish arising from the injuries and pain inflicted on their decedents is relevant to damages recoverable under Section 8.01-52(1).  For instance, defendants selectively quote the following sentence from *Poffenbarger v. Nicolet*, 12 Va. Cir. 64 (Va. Cir. Ct. 1986): "In this action given by statute the

plaintiff cannot recover for the physical pain and mental anguish of the decedent." *Id.* at 65; Def.

Brief at 4. Quite so. But defendants glaringly omit the very next line:

> The mental anguish of the beneficiaries may be increased by the mental
> and physical suffering of the decedent and they may recover damages therefor,
> but it is their mental anguish and not the physical pain and mental anguish of
> the decedent for which recovery is allowed.

*Poffenbarger*, 12 Va. Cir. at 65.

And it was precisely because the *Poffenbarger* Court recognized that evidence of

decedent's condition before death was not only *relevant* to the mental aguish suffered by his

surviving wife, but indeed that "it is not possible for the wife to show her mental anguish without

describing the condition of decedent prior to death," *id.,* that the Court found *admissible*

"photographs showing the decedent's appearance at the beginning of his illness and shortly

before his death." *Id.* at 66.

And while the *Poffenbarger* Court did exclude a "day in the life" video that was found to

be unfairly prejudicial, the Court expressly noted that this video was "relevant to the plaintiff's

damages." *Id.* at 65. Defendants' "relevancy" argument thus fails. [1]

Likewise, defendants selectively quote one line from *Virginia Iron, Coal and Coke Co. v.*

*Odel's Adm'r*, 128 Va. 280 (Va. 1920) – "plaintiff cannot recover for the physical pain and

mental anguish of the decedent," *id.* at 309 Def. Brief at 9, – but then fail to mention that in the

very next paragraph the Court expressly recognized that mental anguish of beneficiaries may be

---

[1] Defendants also mischaracterize *Wortham v. Virginia Physicians, Inc.*, 46 Va. Cir. 63 (Va. Cir. Ct. 1998), saying that "the court granted a motion in limine to exclude photos of decedent before her terminal illness. . . ." Def. Brief. at 10. Not quite. The *Wortham* Court made clear that the "plaintiff seeks to introduce photographs depicting [decedent's] life before her terminal illness (Group I)," that the plaintiff sought to introduce those Group I photographs "in order to prove that the decedent's suffering exacerbated the family's grief" and that the "parties agreed that two or three Groups I pictures may be introduced at trial." *Wortham*, 46 Va. Cir. at 63-64, 63 n.1. So it was undisputed that some photographs depicting the decedent's condition *were* relevant and admitted to prove the beneficiary's mental anguish. Moreover, the Court only excluded certain "photographs as to the decedent's progressive disease and death (Groups II and III)," such as photographs "depicting the decedent *in her coffin and on her deathbed*," which were "likely to inflame" the jury. *Id.* at 63, 64, 65.

increased by their knowledge of injuries and pain inflicted on decedent, and that the beneficiaries may recover damages therefor:

> The mental anguish of the beneficiaries may have been increased by the neglect of the doctor, and the *plaintiff had the right to show this fact* and to recover damages therefor, but it is still their mental anguish and not the physical pain and mental anguish of the decedent for which recovery is allowed. . . .

*Virginia Iron*, 128 Va. at 309 (emphasis added).

So given that the very cases that defendants cite recognize that beneficiaries may recover for their increased mental anguish caused by events and injuries inflicted on decedent, evidence of the events and injuries inflicted on Paul Ambrose aboard Flight 77, including at the Pentagon crash site, is quite relevant to damages recoverable for plaintiffs' mental anguish under Section 8.01-52(1).

Accordingly, evidence of the events and injuries inflicted on their son aboard Flight 77, including when Flight 77 crashed into the Pentagon, is relevant and admissible to prove plaintiffs' mental anguish.  Such evidence would include:

- communications by passengers and crew aboard hijacked planes;[2]

- an exhibit from the Moussaoui trial entitled "Summary of Flight 77," which depicts the identity of the pilots and flight attendants, seat assignments of passengers and telephone calls from the flight;[3]

---

[2] *See* Ambrose Declaration ¶¶3-4 ("I am severely scarred by the knowledge of what occurred on the plane, including that the passengers knew of the hijackings and fatal crashing of other planes; that it was known on this plane of the fate of other planes; that another passenger wrote a farewell note to her children and her husband, and that the Solicitor General talked to his wife and told her of the fate of the other aircraft. . . .  I am also haunted by information I received that the air-phones may not have been properly working and that there were many calls from other planes to loved ones,  but Paul and others on Flight 77 were unable to make calls out from the plane.  I am aware of calls from Paul's plane from a flight attendant and from the wife of the Solicitor General").

[3] *See* Ambrose Declaration ¶ 3 ("I suffer greatly from my knowledge of information which was widely publicly available both in the media and because I was requested by the United States government to serve as a witness in the case of *United States of America vs. Zacharias Moussaoui* in the United States District Court.  I learned of the strategy of the hijackers to take through security and bring on board, mace and/or pepper spray, knives and box-cutters, and bomb devices or devices which appeared to be bombs, which was reported by passengers on the various flights, and which I read in the media and from following the 9/11 Commission proceedings, some of which I attended, which causes me to think of Paul's horrific last minutes alive on the plane").

- testimony from Kevin Shaeffer, an eye-witness who suffered burns when Flight 77 crashed into the Pentagon; *see* Ambrose Declaration ¶ 6;

- photograph exhibits from the Moussaoui trial showing the condition of victims at the Pentagon crash site;[4]

- photograph exhibits from the Moussaoui trial showing the condition of the Pentagon crash site; *see* Ambrose Declaration ¶ 6

- expert witness testimony to help the jury understand the events and injuries inflicted on plaintiffs' son aboard Flight 77, including when Flight 77 crashed into the Pentagon; *see* Ambrose Declaration ¶¶2-4, 6.

Moreover, the Dulles checkpoint video – the *last image* plaintiffs have of Paul – showing the hijackers near Paul passing unabated through checkpoint security makes plaintiffs' mental anguish more probable, such evidence is relevant and admissible to prove plaintiffs' mental anguish.[5]

### D.      Defendants Deliberately Confuse The Issue Of Plaintiffs' Mental Anguish With The Non-Issue Of Decedent's Pre-Death Pain & Suffering.

Defendants' brief protests in page after page after page that "Virginia law does not permit recovery for decedent's pre-death pain and suffering." Def. Brief at 2; *see also*, *id.* at 4, 5, 9, 10,

---

[4] *See* Ambrose Declaration ¶ 6 ("for those who were still alive when the plane entered the Pentagon, I imagine the pain and suffering which they must have gone through, losing their lives either from the impact or the post-crash fire. I have seen the pictures. I know how bad it was and what it looked like. In my nursing career I cared for many burn and accident victims. And while I could not bring myself to open the casket and look at the remains of my son, I know that his remains were found in at least three different places in the Pentagon. I know that there were only pieces of my son in that casket, and as much as I would never want to imagine Paul in that condition, I know that is what happened to the body of my son. These thoughts, visions and undeniable facts terrorize me, causing me extreme mental anguish").

[5] *See* Ambrose Declaration ¶ 2 ("Some of the things that especially cause me anxiety, stress, grief, anguish and horrific nightmares, include visions of seeing Paul go through security with the hijackers. Obviously I very much wanted to see the last pictures of Paul alive as he went through the security checkpoints at Dulles Airport, but the last images of my son alive are with him and the hijackers around him as they breezed through security. I have great anguish thinking about that scene of Paul with the hijackers. Over and over again in my mind, each and every day, for the reset of my life, I see those images. It causes me great grief, anguish, suffering, and tremendous anxiety, as I also envision Paul on the plane with those hijackers. "); *see also*, *id.* ¶15 ("Even at the graves and elsewhere, I am unable to drive from my mind the anguish caused by my last image of Paul alive surrounded by the Flight 77 hijackers as they walked through the Dulles Airport security checkpoint. Those and the images of Paul on the plane haunt me").

11, 14 (same).  Plaintiffs agree.  Plaintiffs in this case have never sought recovery for their son's pre-death pain and suffering, which is not at issue.  There is no "confusion" on this point.

So why do defendants raise this straw man, this exaggerated and disingenuous counter-argument put forth for the purpose of disproving it?  The reason is obvious.  Defendants know that under Rule 401 evidence of the events and injuries inflicted on plaintiffs' son aboard Flight 77 is quite *relevant* as it makes plaintiffs' mental anguish more probable.  Ambrose Declaration ¶¶2-6, 14-15; *Poffenbarger*, 12 Va. Cir. at 65; *Virginia Iron*, 128 Va. at 309.   And "all relevant evidence is admissible" unless barred by another evidentiary rule.  Fed.R.Evid. 402.  And the only other rule defendants cite in their brief is Rule 403.  Def. Brief at 2, 17.  Thus, to create a Rule 403 argument based on "confusion of the issues," defendants inject confusion where none exists by arguing at length (with themselves) about recovery for decedent's pre-death pain and suffering under Virginia law.  Def. Brief at 2, 4, 5, 9, 10, 11, 14.

Indeed, only *after* raising their straw man do defendants protest, "even if the evidence of what took place on Flight 77 or inside the Pentagon had some slight value in establishing plaintiffs' grief, that probative value would be dwarfed by the prospect that the jury would mistakenly render an award based on the pre-impact pain and suffering of passengers aboard Flight 77."  Def. Brief at 14.  But that "prospect" is a figment of defendants' imagination.  The jury will not render an award based on decedent's pre-impact pain and suffering if the Court instructs that (1) the jury may not award damages for decedent's pre-impact pain and suffering, and (2) evidence of events and injuries inflicted on plaintiffs' son is relevant only to establish *plaintiffs'* mental anguish.

The only two cases defendants cite for their "possibility of jury confusion" argument do not help defendants.  In *El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483 (4th Cir. 1986),

in considering plaintiffs' "proffered information to illustrate her claim of *direct mental anguish*" under Section 8.01-52(1), the Fourth Circuit noted with approval that "the district court here did allow some testimony for *that* purpose." *Id.* at 487 (emphasis added). Yet the Fourth Circuit refused to allow the plaintiff to go further and introduce evidence that she suffered a miscarriage and heart damage *for a different purpose*: to recover under Section 8.01-52(1) "not only for [plaintiff's] mental anguish that directly followed [decedent's] death, but also for [plaintiff's] physical injuries that followed from the mental anguish." *Id.* at 488. The Fourth Circuit simply held that recovery for "mental anguish" under Section 8.01-52(1) does not authorize recovery for *physical injuries* "that might result from the survivor's emotional suffering." *Id.* at 487. Thus, the Court excluded evidence of plaintiff's miscarriage and heart attack. *Id.* at 488. Here, since plaintiffs seek recovery under Section 8.01-52(1) for their direct mental anguish, and *not* for physical injuries, *El-Meswari* is off point.

Bizarrely, defendants' cite to *Guidi v. Inter-Continental Hotel*, 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) as *support* to exclude evidence in this damages-only trial of plaintiffs' mental anguish from the events and injuries inflicted on their son aboard Flight 77. Def. Brief at 16-17. In *Guidi*, Judge Preska ruled that the proper forum for the admission of the "emotional and heart-rending testimony of the plaintiffs as to the pain and suffering they and their loved ones experienced as a result of the tragic events of October 26, 1993" when the terrorist attack occurred is precisely the "*damages phase*" of a bi-furcated trial. *Id.* at * 2 (emphasis added). The reason Judge Preska bifurcated that trial was so that mental anguish evidence would not "cloud a jury's ability to render an objective verdict *on the issue of liability*." *Id.* Therefore under the reasoning of *Guidi*, it is emphatically proper in this damages-only trial to admit

evidence of the suffering plaintiffs experienced as a result of the tragic events of September 11th – including at the Dulles checkpoint, aboard Flight 77, and at the Pentagon crash site itself.  *Id.*

### E.    A Limiting Instruction Will Prevent Confusion Of Issues

Lest there be any doubt, defendants' long protest over "confusion" of issues is easily cured by a limiting instruction.  *See* Fed.R.Evid. 105 ("the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly"); *see also*, *Manley v. Ambase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003)("district court acted well within its discretion in giving a limiting instruction to ensure against such speculation"); *American Home Assur. Co. v. Merck*, 462 F. Supp.2d 435, 444 (S.D.N.Y. 2006)("[w]ith respect to Merck's concerns that this evidence should also be excluded due to the danger of unfair prejudice and confusion of issues . . . any concerns can be addressed through appropriate limiting instructions if necessary"); *Baumgart v. Transoceanic Cable Ship Co.*, 2003 WL 22520034 * 1 (S.D.N.Y. Nov. 7, 2003)(denying motion *in limine* to exclude evidence on grounds of "confusion" of issues, which "can be cured by a limited instruction.  Such an instruction will be given if timely requested.").

 Hence, in an abundance of caution to guard against defendants' fears of the "possibility of juror confusion" and "the prospect that the jury would mistakenly render an award based on the pre-impact and suffering of passengers aboard Flight 77," Def. Brief at 14, plaintiffs hereby request under Rule 105 that the Court instruct the jury in the damages-only *Ambrose* trial that:

    1.    Plaintiffs are not entitled to recover damages for the pre-death pain and suffering of their son Paul Ambrose;

    2.    You shall not award any damages for the pre-death pain and suffering of Paul Ambrose;

    3.    You shall consider no evidence for the purpose of awarding damages for the pre-death pain and suffering of Paul Ambrose;

4.      Plaintiffs are entitled to recover damages for their own mental anguish arising from the death of their son Paul Ambrose;

5.      You shall award plaintiffs damages for their mental anguish arising from the death of their son aboard Flight 77, to the extent plaintiffs' mental anguish is proven by a preponderance of the evidence;

6.      You may consider evidence of events and injuries inflicted on their son aboard Flight 77 in so far as you find that such evidence tends to prove plaintiffs' mental anguish;

7.      You may consider evidence of injuries inflicted on their son as Flight 77 crashed into the Pentagon in so far as you find that such evidence tends to prove plaintiffs' mental anguish;

8.      You may consider evidence of events at the Dulles Airport security checkpoint on September 11, 2001 in so far as you find that such evidence tends to prove plaintiffs' mental anguish.

## **CONCLUSION**

For the above reasons, the Court should deny the Aviation Defendants' motion *in limine*.


Dated:  October 5, 2007                    Respectfully submitted,

                                           **MOTLEY RICE LLC**


                        **By:**    ___/S/_____
                                   Ronald L. Motley
                                   Joseph F. Rice
                                   Jodi Westbrook Flowers
                                   Donald A. Migliori
                                   Mary Schiavo
                                   Michael E. Elsner
                                   Robert T. Haefele
                                   Elizabeth Smith
                                   Justin B. Kaplan
                                   Vincent I. Parrett (VP 5092)
                                   Motley Rice LLC
                                   28 Bridgeside Boulevard
                                   Post Office Box 1792
                                   Mount Pleasant, SC 29465
                                   Telephone:  (843) 216-9000
                                   Facsimile:   (843) 216-9450