UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                          :

IN RE SEPTEMBER 11 LITIGATION     :      21 MC 97 (AKH)
                                                         :
                                                         :      This document relates to:
                                                         :
                                                         :      *Ambrose v. American Airlines, Inc., et al.*
                                                         :      02 CV 7150 (AKH)
                                                         :
------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## ORDER REGARDING DEFENDANTS' MOTION IN LIMINE

     Paul Wesley Ambrose was 32 years old when he died, a victim of the terrorists of 9/11.  He had boarded American Airlines Flight 77 at John Foster Dulles Airport the morning of September 11, 2001, expecting to fly to Los Angeles.  The plane never reached its destination.  Five terrorists, employing weapons smuggled aboard, hijacked the airplane, turned it around and flew it into the Pentagon, killing themselves, 58 passengers, 6 crew members and many civilians and military personnel in the Pentagon.  The 9/11 Commission Report (2004), § 1.1, at 8-10.

       Plaintiffs Sharon and Dr. Kenneth Ambrose, the parents of Paul Wesley Ambrose, brought this wrongful death action, seeking damages for the loss of their son.  As was their right, they chose to sue in court, rather than seeking compensation from the Victim Compensation Fund.  See Air Transportation Safety and System Stabilization Act, ("ATSSA", or "the Act"), § 405, 49 U.S.C. § 40101; In re September 11 Litig., 280 F. Supp. 2d 279 (S.D.N.Y. 2003).  Pursuant to the ATSSA, the United States District Court for the Southern District of New York has exclusive jurisdiction over all actions arising from, or relating to, the terrorist-related aircraft crashes of September 11, 2001.  ATSSA, § 408(b).

Under the ATSSA, the law of the State where the aircraft crashed provides the rule for decision, for both conflicts of law and substantive purposes, except to the extent that the law of the State conflicts with the Act or other federal law. Id., at § 408(b)(2); In re September 11 Litig., 494 F. Supp. 2d 232, 237 (S.D.N.Y. 2007). The Pentagon is in Virginia and, as the parties agree, Virginia law governs. Since my rulings on this motion apply to a trial in federal court, the Federal Rules of Evidence also govern. Fed. R. Evid. 101.

## The Facts of the Case

At the time of his death, Paul Wesley Ambrose had graduated from medical school, completed a residency at Dartmouth Medical School in the Department of Community and Family Medicine, and had received a Masters in Public Health from Harvard University. (Pl. Br. at 5). He was planning a career in preventative medicine. Although he had not yet begun to work for income and had no history of earnings, his background, intelligence, ambition and credentials suggested that he would have a promising career. He was engaged to be married, hoped to have a family, and left no dependents. (Def. Br. at 5).

Both of Paul Ambrose's parents enjoyed successful careers: at the time of Paul's death, Kenneth Ambrose was a tenured professor of Sociology/Anthropology at Marshall University, while Sharon Ambrose was the director at nursing at St. Mary's Hospital in Huntington, West Virginia. Kenneth and Sharon Ambrose owned two homes and lived comfortably. Now retired, the Ambroses receive significant retirement benefits, including health care coverage. There was no history of Paul Ambrose having contributed financially to the household, and the Plaintiffs could not articulate any expectation of such contribution in depositions.

## The Procedural Setting

The Ambrose case was identified by counsel for a damages-only trial. 21 MC 97 Order dated 9/25/07. The trial is to begin November 5, 2007. The parties have been heavily engaged in depositions and other discovery in anticipation of the trial. Their preparations have precipitated sharp disagreements concerning the admissibility of several categories of evidence that plaintiffs have identified. It is from these disagreements that the instant motion arises.

Defendants move in limine seeking to exclude evidence and testimony concerning: (1) Paul Ambrose's future earning capacity; (2) the events in boarding, and aboard Flight 77 and the other hijacked flights: for example, pictures of hijackers passing through the security checkpoint in Dulles Airport; the cockpit recorder of United Airlines Flight 93 before it crashed into the field outside Shanksville, Pennsylvania; and the testimony of friends and relatives concerning their conversations with the passengers and crew of American Airlines Flight 77; (3) the experiences of individuals located within the Pentagon on September 11, 2001; and (4) other aspects of the 9/11 experience, including facts learned at the Moussaoui trial and testimony given by the plaintiffs at that trial.[1]

I heard argument on these issues on October 11, 2007, and ruled extemporaneously, mostly to exclude the evidence that plaintiffs propose to offer. This opinion expands and restates the reasoning expressed at the argument.

## The Relevant Statutes and Rules

Virginia law allows a jury to award damages in a wrongful death action for "[s]orrow, mental anguish, and solace which may include the loss of society, companionship,

---

[1] The Defendants asked that the motion in limine and supporting documents be filed under seal. I denied the motion. Defendants made no showing of any particular need for confidentiality, and the public interest in open proceedings in relation to the events of 9/11 outweighs any such concerns. See The Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 96 (2d Cir. 2004).

3

comfort, guidance, kindly offers and advice of the decedent" and "[c]ompensation for reasonably expected loss of income of the decedent". Va. Code. Ann. § 8.01-52. Competent expert testimony is admissible to aid in proving compensation for reasonably expected loss. Id.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Federal Rule of Evidence 403 states that relevant evidence may be excluded (despite its relevance) where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence".

## Discussion

### I. Evidence Regarding Decedent's Prospective Income

Plaintiffs wish to introduce evidence regarding the earnings their son likely would have earned in his lifetime had he not been killed on 9/11. Plaintiffs propose to present the testimony of U.S. Surgeon General C. Everett Koop, to the effect that Paul Ambrose would have "gone on to the roles of Surgeon General of the United States, the cabinet position of HHS, Senior Delegate to the World Health Organization and eventually [become] Dean of a major school of public health." (Pl. Br. at 5). Defendants argue that Plaintiffs had no reasonable expectation that their son would have contributed any significant funds to them, that Dr. Koop's testimony of lost income and evidence on the subject generally would be speculative, and that the prejudicial effect of plaintiffs' proposed evidence would be much greater than any possible value of relevance.

Pursuant to Virginia's wrongful death statute, a parent in a wrongful death action may present evidence of reasonably expected loss of income from a deceased child. See Va. Code Ann. § 8.01-52. A showing of financial dependency is not a prerequisite to introducing such evidence of expected loss. Marshall v. Goughnour, 269 S.E.2d 801, 806 (Va. 1980). However, Plaintiffs' expectation of loss may not be speculative. For example, in the case of Mullins v. Seals, 562 F.2d 326, 328 (4th Cir. 1977), the Fourth Circuit found that under Virginia law, a mother's evidence regarding her 14-year-old deceased child's earning capacity was irrelevant because it was speculative. The court found that there was no basis to assume that the child, who had only held a babysitting job prior to her death, would have attended college, obtained substantial employment or made any substantial financial contribution to her family had she survived. Similarly, in Howell v. Cahoon, 372 S.E.2d 363, 365 (Va. 1988), the Virginia Supreme Court affirmed the trial court's rejection of a mother's proffered evidence of loss of a deceased child's income. The court agreed with the trial court that the proffered evidence was speculative, and therefore, inadmissible, where the child, an eighteen-year-old high school graduate, had expressed a desire to become an architect and thereafter care for his brother and mother, but had yet to enter the profession or obtain employment. Likewise, in Cassidy v. Martin, 266 S.E.2d 104, 108 (Va. 1980), the Virginia Supreme Court found that the trial court had erred in admitting a mother's proffered evidence of expert witness testimony on the "reasonably expected loss" of her son's income. The court found that the projection of future income of the deceased child, a mentally retarded 21-year-old who had reached a mental age of nine years at the time of his death and who was a functional illiterate, was too speculative to be admissible.

Defendants note that Paul Ambrose was living paycheck to paycheck before his death, and had, on at least one occasion, borrowed money from his parents. (Def. Br. at 7). Had Paul Ambrose lived, he probably would have married and had children, and they, not his financially sound parents, probably would have been the beneficiaries of his income and earnings. Kenneth and Sharon Ambrose were economically well-established, and it is far from clear if they had any reasonable expectation of receiving compensation from their son had he lived. Although there is some indication that Paul Ambrose spoke of sharing a vacation home with his parents and paying a half-share of the purchase price, that evidence is not very compelling in light of the family responsibilities he sought and the comfortable financial circumstances of his parents.

I ruled at the argument that plaintiff would not be permitted to prove Paul Ambrose's lost income without first proving some reasonable expectation by his parents that they would have received compensation from their son. Without such evidence as a predicate, the testimony of how much Paul Ambrose might have made during his lifetime would be prejudicial to a fair trial and take up needless trial time. Plaintiffs will be permitted to introduce evidence of Paul Ambrose's lost earnings only if Plaintiffs first establish through their testimony a reasonable expectation that they would have enjoyed all or any part of that income had he survived.

**II.    Evidence of Plaintiffs' Pain and Suffering Through Extrinsic Evidence of the Events of September 11**

Plaintiffs may recover damages for their "[s]orrow, mental anguish and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent" pursuant to Va. Code Ann. § 8.01-52(1). However, the decedent's pre-death pain and

6

suffering is not recoverable.  Seymour v. Richardson, 75 S.E.2d 77, 79 (Va. 1953).  Plaintiffs intend to prove their sorrow and anguish caused by the death of their son through their testimony.  They propose to tell the jury that they had two sons, both adopted, that they had lost their elder son to illness, that his wife was afflicted with illness causing them to assume custody and raise their daughter, and that the death of Paul left them childless.  They propose to tell the jury of Paul's qualities and potential and their dreams of living in close harmony with Paul and the family they had hoped he would have.  They propose to tell the jury how they reacted to the news of Paul's death in the crash of the hijacked plane into the Pentagon, and as they learned the stories of the other hijacked airplanes and of those who died in them.

Defendants agree that the plaintiffs may testify about their sorrow and mental anguish, and their lost solace, society and companionship from the death of their son.  But plaintiffs propose another category of proofs: direct proofs of the events of 9/11 in the form of the cockpit voice and flight recorders aboard United Airlines Flight 93 before it crashed into the field near Shanksville, Pennsylvania,[2] testimony of witnesses to conversations with persons aboard the several hijacked airplanes, pictures of persons passing through the American Airlines security checkpoint at Dulles Airport, including pictures of the decedent and of one or more of the terrorists, testimony of a witness who was injured at the Pentagon and suffered severe burns, and the like.  Plaintiffs state that the evidence is relevant to substantiate their testimony, to show that the pain and suffering they experienced from the death of their son was real and credible.

Defendants move to exclude the following categories of evidence of the events surrounding 9/11:  (1) testimony of individuals receiving phone calls from loved ones aboard Flight 77; (2) testimony from a burn victim from inside the Pentagon; (3) testimony from a

---

[2] See my order dated September 12, 2007 regulating the admissible components of that evidence.  In re September 11 Litig., 21 MC 97, 02 Civ. 7912, 2007 WL 2668608 (S.D.N.Y. Sept. 12, 2007).

7

decedent's daughter regarding a note found at the crash site from the decedent to her husband; (4) photographs, models and images of the Pentagon before and after the Flight 77 crash; (5) photographs of body parts found inside the Pentagon; (6) the Flight 93 Cockpit Voice Recorder and Flight Data Recorder; and (7) videotapes of the decedent and of a hijacker separately passing through the security checkpoint for American Airlines Flight 77 at Dulles Airport. Defendants contend that this evidence has little if any relevance to a damages-only trial, that plaintiffs' testimony does not need buttressing, and that the true purpose and effect of these categories of evidence is to prejudice the trial, confuse the jury as to the issues put to them for decision, and substantially complicate and lengthen the trial and the issues to be tried.

What is clearly relevant to the amount of Plaintiffs' damages is their own mental anguish associated with the tragic loss of their child in the events of September 11. To this end, the Plaintiffs' testimony regarding their feelings, as well as testimony regarding their knowledge from whatever source of the events of September 11, is admissible. Generally, the Plaintiffs are free to testify about the matters they viewed or learned from whatever source, including their reactions when they saw or heard about the items of extrinsic evidence that they seek to introduce at trial. However, the items of extrinsic evidence themselves and the testimony of others are inadmissible: whatever slight relevance they may have to support or add significance to the Plaintiffs' claims of mental anguish and sorrow is outweighed by the strongly prejudicial value of such evidence. In short, the evidence that plaintiffs propose to introduce is a clear example of evidence that should be excluded because of its high likelihood of prejudicing, confusing and misleading the jury pursuant to Federal Rule of Evidence 403.

## Conclusion

Defendants' motion in limine to exclude evidence is GRANTED in substantial part, as qualified in this order and opinion. As rulings in limine, the issues may be reasserted by counsel and reexamined by the court if, in the context of the dynamics of the trial, considerations different from those discussed in this order and opinion suggest a different, or modified, ruling.

SO ORDERED.

Date:   October 16, 2007
        New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge